**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| PAUL TRANSPORTATION, INC., | ) | Case Number: 10-13022 |
| Tax ID No. 71-0921816, | ) | (Chapter 11) |
| | ) | |
| Debtor. | ) | |

**DEBTOR'S MOTION FOR INTERIM AND FINAL ORDERS UNDER 11 U.S.C. §§ 105(a), 361, 363, AND 364 AND BANKRUPTCY RULES 2002, 4001, 6003, AND 9014: (A) AUTHORIZING DEBTOR TO FACTOR, AND INCUR POST-PETITION SECURED INDEBTEDNESS; (B) GRANTING SECURITY INTERESTS AND SUPER-PRIORITY CLAIMS; (C) APPROVING USE OF CASH COLLATERAL; AND (D) SCHEDULING FINAL HEARING**

Pursuant to 11 U.S.C. §§ 105(a), 361, 363, and 364, and Bankruptcy Rules 2002, 4001, 6003, and 9014, F.R.Bankr.P., Paul Transportation, Inc. (the "Debtor"), as debtor and debtor in possession in the above-captioned chapter 11 case (the "Chapter 11 Case"), moves for entry of an Order in the form attached hereto as Exhibit 1 and incorporated herein by reference (the "Interim Order"), which:

(A) authorizes the Debtor to factor its invoices to RTS Financial Services, Inc. (the "Factor") at the rate of 1.5% with a 3.5% reserve and with full recourse, and upon such other terms and conditions set forth in the Interim Order (Interim Order, page 5, paragraph 7);

(B) authorizes the Debtor to execute and deliver to the Factor the Factoring Agreement attached hereto as Exhibit 2 and incorporated herein by reference (the "Factoring Agreement"), and to perform such other and further acts as may be necessary or appropriate in connection with the Factoring Agreement (Interim Order, page 9, paragraph 14);

(C) authorizes the Debtor to grant liens on and security interests in (1) all Accounts, wherever located or situated, and whether now existing or arising in the future, and whether now owned or at any time in the future acquired by Assignor, together with all proceeds and monies due or becoming due on such Accounts; all guaranties, insurance and security for such Accounts; all of Assignor's rights and interests in the goods giving rise to such Accounts, and the rights associated with or related or pertaining to such goods, including without limitation the right of stoppage in transit and any and all related insurance, any items substituted therefore as replacements and all additions thereto; (2) all of Assignor's chattel paper, instruments, general intangibles, securities, contract rights and insurance associated with or related to the Accounts; (3) all equipment and inventory; and (4) all proceeds of any of the foregoing Accounts, property, rights and interests, as

set forth in Section 4 of the Factoring Agreement (with the exception of avoidance actions, which may be included in the Factor's collateral under the final order on the Motion), with such liens being subject only to valid, perfected, and unavoidable pre-petition liens and payment of United States Trustee fees and professional fees allowed and payable under 11 U.S.C. §§ 330, 331 and 503 (the Carve-Out Expenses), with the Factor's liens securing both pre-petition and post-petition obligations to the Factor, and to grant the Factor super-priority administrative expense claims, subject only to the Carve-Out Expenses (Interim Order, page 6 paragraph 10; Factoring Agreement, page 2, Section 4);[a]

(D) authorizes for the Debtor to: (1) use cash collateral throughout the pendency of this Chapter 11 Case, if the funds in or coming into the Debtor's possession constitute cash collateral within the meaning of 11 U.S.C. § 363(a); and (2) provide adequate protection to the Factor (Interim Order, page 6, paragraph 8), and

(E) schedules, pursuant to Bankruptcy Rule 4001, a final hearing (the "Final Hearing") for this Court to consider entry of a final order (the "Final Order") authorizing, on a final basis, the factoring and all relief requested in this Motion (Interim Order, page 13, paragraph 25).

The Debtor states as follows in support of this Motion:

1. An order for relief under Chapter 11 of Title 11, United States Code (the "Bankruptcy Code"), was entered in this case on May 18, 2010.

2. The Debtor is a debtor in possession. The Debtor is authorized and continues to operate its business and manage its properties pursuant 11 U.S.C. §§ 1101(1), 1107(a) and 1108.

3. The Debtor is a trucking company that now operates approximately 125 company trucks and uses an additional 51 owner/operators to provide flatbed transportation services across the lower 48 states. In addition to employing over 175 drivers, the Debtor employs 25 people in non-driving positions.

4. To survive, the Debtor began factoring its invoices to the Factor months before this case was commenced. While factoring its invoices may be an ordinary course of business activity in which the Debtor could engage without Court approval, factoring on the terms and conditions set

---

[a] Except as set out in the foregoing paragraph, the relief requested through the Motion does not implicate any of the matters described in Rule 4001(c)(1)(B)(i) through (xi), F.R.Bankr.P.

out in the Factoring Agreement appears to involve elements of secured financing and asset disposition, both of which require Court approval.

5.    The Debtor has requested and, subject to the Debtor obtaining the Court approval requested herein, the Factor has agreed to provide, post-petition factoring at the rate of 1.5% with a 3.5% reserve and with full recourse, and upon such other terms and conditions set out in the Interim Order and the Factoring Agreement. The agreement between the Debtor and the Factor is fully set forth in the Interim Order and Factoring Agreement.

6.    If the Debtor is not permitted to immediately continue factoring its invoices, the Debtor's cash flow will be disrupted, which will render the Debtor unable to operate in the ordinary course of its business and to timely pay its ongoing operational expenses. Absent prompt entry of the Interim Order, immediate and irreparable harm to the Debtor's estate and its creditors will occur.

7.    The Debtor is unable to obtain: (A) unsecured credit allowable under 11 U.S.C. § 503(b)(1) as an administrative expense; (B) unsecured credit allowable under 11 U.S.C. § 364(a) or (b); or (C) credit solely with the protection afforded under 11 U.S.C. § 364(c)(1). To the extent its relationship with the Factor is a credit relationship, the Debtor is unable to obtain credit without the Factor being: (A) given priority over any and all administrative expenses of the kind specified in 11 U.S.C. §§ 503(b) or 507(b), except United States Trustee fees and professional fees allowed and payable under 11 U.S.C. §§ 330, 331 and 503; (B) secured by a first lien on all property of the estate that is not otherwise subject to a lien; and (C) secured by a junior lien on property of the estate that is subject to a lien. Post-petition credit on such terms is authorized by 11 U.S.C. §§ 364(c)(1), (c)(2) and (c)(3).

8.      The following creditors may assert secured interests in assets of the estate: Afco Insurance Finance; Brown & Brown of Central OK; Citizens Bank of Oklahoma; Commercial Credit Group, Inc.; Coppermark Bank; FCC Equipment Financing; GE Capital Corp.; Colonial Pacific Leasing Corporation; Transport International Pool, Inc.; GMAC; Paccar Financial Corp.; Paul Logistics, Inc.; Dell Financial; IBM Credit, LLC, National American Insurance Company; Toyota Financial Services, Inc.; Transadvantage, Inc.; Union Bank of Chandler; Wells Fargo Equipment Finance, and the Factor. To the extent any of these creditors asserted lien interests against the Debtor's pre-petition accounts receivable, those liens appear to have either been subordinated to the Factor's interests, or released entirely. Under 11 U.S.C. § 552, property acquired by the Debtor post-petition will not generally be subject to liens resulting from pre-petition security agreements. Given their pre-petition agreements to subordinate their interests to the Factor's interests, or outright release of liens, and given the impact of 11 U.S.C. § 552, the Debtor submits that none of its creditors, other than the Factor, are entitled to adequate protection with respect to the Debtor's accounts receivable. Other than as set forth in this paragraph, the Debtor is unaware of any entities asserting an interest in any property of the Debtor's estate. Rule 4001(c)((1)(B), F.R.Bankr.P.

9.      Pursuant to Rules 4001(c)(2) and 6003, F.R.Bankr.P., the Debtor requests that the Court set an interim hearing on this Motion before the expiration of the 14 day period specified under Rule 4001(c)(2) and expiration of the 21 day period specified under Rule 6003, and at such hearing authorize the Debtor to factor its invoices on the terms and conditions set forth in the Interim Order and Factoring Agreement. The Debtor submits that such factoring is necessary to avoid immediate and irreparable harm to the estate pending the Final Hearing. At the Final Hearing, the Debtor will request entry of the Final Order approving the Debtor's factoring of

invoices to the Factor on the terms and conditions set out in the Factoring Agreement and Interim Order and all relief requested in this Motion.

10.     The terms and conditions of the Interim Order are fair and reasonable, were negotiated by the parties at arms' length, were entered into by the parties in good faith, and are the best available to the Debtor under the present market conditions and financial circumstances. The factoring under the Interim Order is and will be made in good faith. The Debtor requests, therefore, that any credit and loans extended to the Debtor by the Factor pursuant to the Interim Order, be deemed to have been extended and made in good faith, as that phrase is used in 11 U.S.C. § 364(e).

11.     The Debtor gave notice of this Motion to: (A) all creditors who the Debtor believes have or may assert an interest in the Debtor's assets, including cash collateral; (B) all applicable taxing authorities; (C) the committee appointed under 11 U.S.C. § 1102, or its authorized agent, or, if no committee of unsecured creditors has been appointed, the creditors included on the list filed under Bankruptcy Rule 1007(d); (D) the United States Trustee; (E) the twenty largest unsecured creditors, (F) those who have filed an entry of appearance and request for notices in this case, and (G) the Factor. Due to the exigent circumstances of this matter, and given that the relief described herein is requested on an interim basis only, the Debtor submits that such notice was sufficient and asks the Court to approve the same. The Debtor requests the Court to determine that service of this Motion as provided above with the Interim Order and Factoring Agreement attached satisfies the requirements of Rule 4001(c)(1).

WHEREFORE, Paul Transportation, Inc., respectfully requests that the Court: (A) schedule an immediate hearing on this Motion and enter the Interim Order in the form attached hereto as Exhibit 1, authorizing the Debtor to factor its invoices to RTS Financial Services, Inc. on the terms and conditions set forth in the Interim Order and the Factoring Agreement attached hereto as

Exhibit 2 and authorizing the Debtor to: (1) use cash collateral throughout the pendency of this

Chapter 11 Case, if the funds in or coming into the Debtor's possession constitute cash collateral

within the meaning of 11 U.S.C. § 363(a); and (2) provide adequate protection to RTS Financial

Services, Inc.; and (3) schedule, pursuant to Bankruptcy Rule 4001, a final hearing for this Court to

consider entry of an order authorizing, on a final basis, the factoring and all relief requested in this

Motion; and (4) grant the Debtor any other and further relief as the Court deems appropriate.

/s/ Matthew C. Goodin
Matthew Goodin, OBA #19327
Stephen W. Elliott, OBA #2685
KLINE, KLINE, ELLIOTT & BRYANT, P.C.
720 N.E. 63rd Street
Oklahoma City, OK  73105
Telephone: (405) 848-4448
Facsimile: (405) 842-4539
mgoodin@klinefirm.org

ATTORNEYS FOR
THE DEBTOR IN POSSESSION,
PAUL TRANSPORTATION, INC.

**CERTIFICATE OF SERV ICE**

This is to certify that on the 18th day of May, 2010, I electronically transmitted the above and foregoing motion to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the ECF registrants. This is to further certify that on the 18th day of May, 2010, true and correct copies of the above were mailed by first class mail, postage prepaid, to all parties listed on the Service List attached hereto as Exhibit "A."

/s/ Matthew C. Goodin
Matthew Goodin, OBA #19327

# SERVICE LIST

**Entries of Appearance:**

Office of the U.S. Trustee
Fourth Floor
215 Dean A. McGee Avenue
Oklahoma City, OK 73105

**20 Largest Unsecured Creditors:**

Internal Revenue Service
Ogden, UT 84201

T and W Tire
5011 Jacksboro Hwy
Wichita Falls, TX 76302

American Express
PO Box 650448
Dallas, TX 75265-0448

Comdata Corp PA427
5301 Maryland Way
Brentwood, TN 37027

Goodyear Tire and Rubber Co
PO Box 277348
Atlanta, GA 30384-7348

Dynasty Transportation Inc
PO Box 91825
Lafayette, LA 70509

Kansas Department of Revenue
Division of Property Valuation
915 SW Harrison St
Topeka, KS 66625

Miller Truck Lines Inc
Dept 1966
Tulsa, OK 74182

Dothan Tarpaulin Products Inc
6275 US Highway 231 South
Dothan, AL 36302

Ameriquest
PO Box 828997
Philadelphia, PA 19182-8997

Katz Sapper and Miller
PO Box 6035
Indianapolis, IN 46236-0670

Oklahoma Tax Commission
Withholding
PO Box 26860
Oklahoma City, OK 73126-0860

Rush Truck Centers
Regions Interstate Billing
PO Box 2153
Birmingham, AL 35287-1265

Doonan Peterbilt of Great Bend
PO Box 1286
Great Bend, KS 67530

Oklahoma Tax Commission
Franchise Tax Division
PO Box 26930
Oklahoma City, OK 73126-0930

Qualcomm Incorporated
File No 54210
Los Angeles, CA 90074-4210

Magill Truck Lines Inc
211 W 53rd St N
Wichita, KS 67204

Barber County Treasurer
118 East Washington
Medicine Lodge, KS 67104

Lynden Transport Inc
1800 International Blvd
Seattle, WA 98188

Oklahoma Corp Commission
Trans Div IFTA Section
PO Box 52948
Oklahoma City, OK 73152-2948

**Secured Creditors:**

AFCO
PO Box 4795
Carol Stream, IL 60197-4795

Brown and Brown of Central OK
PO Box 16340
Oklahoma City, OK 73113

Citizens Bank of Oklahoma
3353 East 41st St
Tulsa, OK 74135

Colonial Pacific Leasing Corp
1010 Thomas Edison Blvd
Cedar Rapids, IA 52404-8247

CitiCapital Commercial Corp
PO Box 6229
Carol Stream, IL 60197-6229

General Electric Capital Commerci
Lockbox 643941
PNC Bank 500 First Avenue
Pittsburgh, PA 15219

William Hoch and Nkem A House
Crowe and Dunlevy
20 North Broadway, Ste 1800
Oklahoma City, OK 73102

Commercial Credit Group Inc
PO Box 60121
Charlotte, NC 28260-0121

General Electric Capital Corp
PO Box 640387
Pittsburgh, PA 15264-0387

Bank of the West
1450 Treat Blvd
Walnut Creek, CA 94597

GE Capital Corporation
Lockbox 643941
Pittsburgh, PA 15219

GE Capital Solutions
PO Box 822108
Philadelphia, PA 19182-2108

UCC Direct Services
330 North Broadway, Ste 1800
Oklahoma City, OK 73102

William Hoch and Nkem A House
Crowe and Dunlevy
20 North Broadway, Ste 1800
Oklahoma City, OK 73102

GMAC
PO Box 9001948
Louisville, KY 40290

National American Insurance Co
PO Drawer 9
Chandler, OK 74834

Oklahoma Workers Comp Court
1915 North Stiles Ave
Oklahoma City, OK 73105-4918

Paccar Financial Corp
PO Box 676014
Dallas, TX 75267-6014

Paul Logistics Inc
119 County Road 2380
Bagwell, TX 75412

Larry Paul
119 CR 2380
Bagwell, TX 75442

RTS Financial Service Inc
8601 Morovia
Lenexa, KS 66215

Edward M Zachary
Bryan Cave LLP
Two North Central Ave, Ste 2200
Phoenix, AZ 85004

John W Mee III
Mee Mee Hoge and Epperson
1900 NW Expressway, Ste 1400
Oklahoma City, OK 73118

Toyota Financial Service
Commercial Finance Dept 2431
Carol Stream, IL 60132-2431

Michael L Lloyd
3810 North Peniel Ave
Bethany, OK 73008

Trans Advantage Inc
One Premier Drive
St Louis, MO 63026

Transport International Pool Inc
DBA Trailer Fleet Services
426 West Lancaster Ave
Devon, PA 19333

Union Bank of Chandler
1001 Manvel Ave
Chandler, OK 74834

Wells Fargo Equipment Finance
MAC N9306070
733 Marquette Ave, Ste 700
Minneapolis, MN 55402

Wells Fargo
PO Box 1450
Minneapolis, MN 55486-8178

**Taxing Authorities:**

Arkansas Dept of Revenue
Individual Income Tax Section
PO Box 9941
Little Rock, AR 72203-9941

Arkansas Dept of Finance & Admi
Miscellaneous Tax Section
PO Box 896
Little Rock, AR 72203-0896

Arkansas Employmt Security Dept
PO Box 8007
Little Rock, AR 72203-8007

Barber County Treasurer
118 East Washington
Medicine Lodge, KS 67104

Colorado Department of Labor &
Employment
PO Box 956
Denver, CO 80201-0956

Colorado Dept of Revenue
1375 Sherman Street
Denver, CO 80261

DEQ  Oklahoma Department
of Environmental Quality
PO Box 2036
Oklahoma City, OK  73101

Environmental Protection Agency
c/o US Attorney
1200 West Okmulgee, Suite 201
Muskogee, OK 74401

Environmental Protection Agency
c/o US Attorney
555 4th Street NW
Washington DC 20530

Environmental Protection Agency
Suite 1200
1445 Ross Avenue
Dallas. TX 75202-2733

Environmental Protection Agency
Ariel Ross Building
1200 Pennsylvania Avenue NW
Washington DC 20460

Garfield County Treasurer
114 West Broadway Avenue
Enid, OK 73701

Georgia Dept of Revenue
PO Box 740387
Atlanta, GA 30374-0387

Indiana Dept of Revenue
PO Box 7221
Indianapolis, IN 46207-7221

Internal Revenue Service
Ogden, UT 84201

Internal Revenue Service
Bankruptcy Section M/S 5024 OKC
55 North Robinson
Oklahoma City, OK 73102

Iowa Dept of Revenue
State Treasurer
PO Box 10411
Des Moines, IA 50306-0382

Iowa Dept of Transportation
PO Box 10382
Des Moines, IA 50306-0382

Iowa Workforce Development
1000 East Grand Ave
Des Moines, IA 50319-0209

Kansas Dept of Revenue
Division of Property Valuation
915 SW Harrison St
Topeka, KS 66625

Kansas Dept of Revenue
915 SW Harrison St
Topeka, KS 66625

Kansas Employment Security Fund
PO Box 400
Topeka, KS 66601-0400

Kentucky State Treasurer
Motor Carrier Division
PO Box 2004
Frankfort, KY 40602-2004

Missouri Dept of Revenue
PO Box 999
Jefferson City, MO 65108-0999

Missouri Division of Employment
Security
PO Box 888
Jefferson City, MO 65102-0888

New Mexico Motor Vehicle Div
PO Box 5188
Santa Fe, NM 87504-5188

New Mexico Taxation & Revenue
PO Box 5188
Santa Fe, NM 87504-5188

New York State Tax Department
RPC HUT
PO Box 15166
Albany, NY 12212-5166

Oklahoma Corp Commission
Trans Div IFTA Section
PO Box 52948
Oklahoma City, OK 73152-2948

Oklahoma Corporation Commission
PO Box 52000
Oklahoma City, OK 73152-2000

Oklahoma County Treasurer
PO Box 268875
Oklahoma City, OK 73126-8875

Oklahoma County Treasurer
Room 307
320 Robert S. Kerr Avenue
Oklahoma City, OK 73102-3434

Oklahoma Employment Security Comm.
Legal Division
PO Box 53039
Oklahoma City, OK 73152-3039

Oklahoma Employment Security
Commission
PO Box 52004
Oklahoma City, OK 73152-2004

Oklahoma Tax Commission
Franchise Tax Division
PO Box 26930
Oklahoma City, OK 73126-0930

Oklahoma Tax Commission
Withholding
PO Box 26860
Oklahoma City, OK 73126-0860

Oklahoma Tax Commission
Legal Division - Bankruptcy Section
120 North Robinson, Suite 2000
Oklahoma City, OK 73102-7801

Oklahoma Tax Commission
PO Box 26940
Oklahoma City, OK 73126-0940

Oregon Dept of Transportation
Motor Carrier Trans
550 Capitol Street NE
Salem, OR 97301-2530

Texas Workforce Commission
PO Box 149037
Austin, TX 78714-9037

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| PAUL TRANSPORTATION, INC., | ) | Case No. : |
| Tax ID No. 71-0921816, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |

**INTERIM ORDER UNDER 11 U.S.C. § § 105(a), 361, 363, AND 364 AND BANKRUPTCY RULES 2002, 4001, 6003, AND 9014: (A) AUTHORIZING DEBTOR TO FACTOR, AND INCUR POST PETITION SECURED INDEBTEDNESS; (B) GRANTING SECURITY INTERESTS AND SUPER-PRIORITY CLAIMS; (C) APPROVING USE OF CASH COLLATERAL; AND (D) SCHEDULING FINAL HEARING**

Paul Transportation, Inc. (the "Debtor"), as debtor and debtor-in-possession in the above-captioned chapter 11 case (the "Chapter 11 Case"), moved on May 18th, 2010 (the "Motion") for interim and final orders seeking:

(a) authorization for the Debtor to factor its invoices to RTS Financial Services, Inc. (the "Factor") at the rate of 1.5% with a 3.5% reserve and with full recourse, and upon such other terms and conditions set forth in this interim order (the "Interim Order");



(b) authorization for the Debtor to execute and deliver to the Factor the Factoring Agreement attached as Exhibit A to the Motion (the "Factoring Agreement"), and to perform such other and further acts as may be necessary or appropriate in connection with the Factoring Agreement;

(c) authorization for the Debtor to grant liens on and security interests in (1) all Accounts, wherever located or situated, and whether now existing or arising in the future, and whether now owned or at any time in the future acquired by Assignor, together with all proceeds and monies due or becoming due on such Accounts; all guaranties, insurance and security for such Accounts; all of Assignor's rights and interests in the goods giving rise to such Accounts, and the rights associated with or related or pertaining to such goods, including without limitation the right of stoppage in transit and any and all related insurance, any items substituted therefore as replacements and all additions thereto; (2) all of Assignor's chattel paper, instruments, general intangibles, securities, contract rights and insurance associated with or related to the Accounts; (3) all equipment and inventory; and (4) all proceeds of any of the foregoing Accounts, property, rights and interests as provided in the Factoring Agreement to secure the Debtor's pre-petition obligations, and post petition obligations to the Factor, and to grant the Factor super-priority administrative expense claims;

(d) authorization for the Debtor to: (1) use cash collateral, if the funds in or coming into the Debtor's possession constitute cash collateral within the meaning of 11 U.S.C. § 363(a); and (2) provide adequate protection to the Factor;

(e) to schedule, pursuant to Bankruptcy Rules 4001 and 6003, an interim hearing (the "Interim Hearing") on the Motion, to be held to consider entry of this Order

authorizing the Debtor to factor pursuant to the terms of this Order and the Factoring Agreement; authorization for the Debtors to grant the Factor as adequate protection: (1) replacement liens on and security interests in all of the Debtor's assets; and (2) allowed super-priority administrative expense claims, in both instances, as provided herein;

(f) to schedule, pursuant to Bankruptcy Rules 4001, a final hearing (the "Final Hearing") for this Court to consider entry of a final order (the "Final Order") authorizing, on a final basis, the factoring and all relief requested in the Motion.

Upon the record presented at the Interim Hearing and after due deliberation, for good and sufficient cause,

**IT IS HEREBY FOUND, DETERMINED, ORDERED, ADJUDGED, AND DECREED THAT:**

1. Disposition. The Motion is granted on an interim basis on the terms set forth in this Order. Any objections to the interim relief sought in the Motion that have not previously been resolved or withdrawn, including any reservations of rights therein, are hereby overruled on their merits. This Order shall be valid, binding on all parties-in-interest, and fully effective immediately upon entry

2. Jurisdiction; Venue. The Court has jurisdiction over the Chapter 11 Case, the parties, and the Debtor's property pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. §157(b). Venue is proper under 28 U.S.C. §§ 1408 and 1409.

3. Notice. Notice of the Motion, the relief requested and the Interim Hearing was served by the Debtor on (a) all creditors who the Debtor believes have or may assert an interest in the Debtor's assets, including cash collateral; (b) all applicable taxing authorities; (c) the committee appointed under 11 U.S.C. § 1102, or its authorized agent, or, if no committee of unsecured creditors has been appointed, the creditors included on the list filed under Bankruptcy

Rule 1007(d); (d) the United States Trustee; (e) the twenty largest unsecured creditors, (f) those who have filed an entry of appearance and request for notices in this case, and (g) the Factor. Under the circumstances, the notice given by the Debtor of the Motion, the relief requested and the Interim Hearing constitutes due and sufficient notice, and no further notice of the relief sought at the Interim Hearing and the relief granted by this Order is necessary or required.

4. Purpose and Necessity of Factoring and Use of Cash Collateral. The Debtor must factor its invoices as described in the Motion, and must use what may be cash collateral, to timely pay: (a) the ordinary course expenses involved in operating the Debtor's business post-petition; (b) the other obligations the Debtor has sought authorization in its "first day" motions to pay; and (c) the other administrative expenses of this case. The Debtor is unable to obtain adequate unsecured credit allowable under 11 U.S.C. § 503 as an administrative expense or other financing under 11 U.S.C. § 364(c) or (d) on equal or more favorable terms than those set forth in the Factoring Agreement within the time-frame required to avoid immediate and irreparable harm to the Debtor and its bankruptcy estate. The Debtor is unable to obtain financing on a post-petition basis without the Debtor granting the Super-Priority Claims as defined below and the Factor Liens as defined below.

5. Good Cause. The Debtor's ability to obtain sufficient working capital and liquidity under the Factoring Agreement and through use of cash collateral is vital to the Debtor's estate and its creditors, so that the Debtor can continue to operate its business in the ordinary course, serve its customers, and preserve the jobs of its employees. The Debtor's estate, creditors, customers, and employees will be immediately and irreparably harmed if this Order is not entered. Consummation of the Factoring Agreement and authorization to use cash collateral in accordance with this Order and the Factoring Agreement is in the best interests of the Debtor's

estate, creditors, customers, and employees. Good cause has been shown for the interim relief sought in the Motion.

6. Good Faith; Fair Consideration and Reasonably Equivalent Value. The terms of the Factoring Agreement, including the rates and fees applicable thereto and intangible factors, are at least as favorable to the Debtor than those available from alternative sources. Based upon the record before the Court, the Factoring Agreement and the terms of the Debtor's use of cash collateral have been negotiated in good faith and at arm's-length between the Debtor and the Factor. Any factoring or other financial accommodations made to the Debtor by the Factor pursuant to this Order and the Factoring Agreement shall be deemed to have been extended by the Factor in good faith, as that term is used in 11 U.S.C. § 364(e), and the Factor shall be entitled to all protections afforded thereby. The terms of the factoring under the Factoring Agreement are fair and reasonable, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties, and is supported by reasonably equivalent value and fair consideration.

7. Immediate Entry of Order. The Debtor has requested immediate entry of this Order pursuant to Bankruptcy Rules 4001(b)(2) and (c)(2) and 6003. The permission granted herein to enter into the Factoring Agreement and obtain funds thereunder and to use cash collateral is necessary to avoid immediate and irreparable harm to the Debtor and its bankruptcy estate. This Court concludes that entry of this Order is in the best interests of the Debtor's estate and creditors as it will, among other things, provide the liquidity necessary for the continued flow of goods and services to the Debtor that are necessary to maintain the operation of the Debtor's business and further enhance the Debtor's prospects for a successful restructuring.

8. Authorization to Use Cash Collateral. The Debtor is authorized to use cash collateral in the ordinary course of its business throughout the Chapter 11 Case until otherwise ordered by the Court.

9. Interim Factoring. Subject to the terms and conditions of this Order and the Factoring Agreement, the Debtor is authorized to factor its invoices pending entry of the Final Order.

10. Super-Priority Claim and Factor Liens.

Except as provided in this Order with respect to the Carve-Out Expenses (as defined below), the Factor is hereby granted, and all of the obligations of the Debtor under the Factoring Agreement, and the diminution, if any, in the value of the Factor's interest in cash collateral by virtue of the Debtor's use of cash collateral (collectively, the "Factoring Obligations"), which shall and hereby do constitute, an allowed super-priority administrative expense claim against the Debtor (the "Super-Priority Claims") pursuant to 11 U.S.C. § 364(c)(1), having priority over any and all administrative expense claims, adequate protection claims and all other claims against the Debtor, now existing or hereafter arising, of any kind whatsoever, including without limitation, all claims arising under 11 U.S.C. §§ 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 546, 726, 1113 or 1114 and any other provision of the Bankruptcy Code or otherwise. The Superpriority Claims shall be payable from and have recourse to all pre-petition and post-petition property of the Debtor and all proceeds thereof, including, without limitation, all proceeds or other amounts received in respect of the Debtor's claims and causes of action arising under state or federal law under sections 11 U.S.C. §§ 541, 542, 544, 545, 547, 548, 549, 550, 551, 552 and 553 (collectively, the "Avoidance Actions"), provided, however, the Factoring Obligations shall only be payable from the Avoidance Actions

only if so approved in the Final Order. The Super-Priority Claims granted pursuant to this paragraph shall be subject and subordinate in priority of payment only to payment of the Carve-Out Expenses.

As security for the Factoring Obligations, the Factor is hereby granted liens under 11 U.S.C. §§ 361(2), 363, and 364(d) on all of the Collateral, as defined below, subject and subordinate in priority only to: (i) valid, perfected and unavoidable pre-petition liens; and (ii) payment of the Carve-Out Expenses (the "Factor Liens".) "Collateral" shall mean (1) all Accounts, wherever located or situated, and whether now existing or arising in the future, and whether now owned or at any time in the future acquired by Assignor, together with all proceeds and monies due or becoming due on such Accounts; all guaranties, insurance and security for such Accounts; all of Assignor's rights and interests in the goods giving rise to such Accounts, and the rights associated with or related or pertaining to such goods, including without limitation the right of stoppage in transit and any and all related insurance, any items substituted therefore as replacements and all additions thereto; (2) all of Assignor's chattel paper, instruments, general intangibles, securities, contract rights and insurance associated with or related to the Accounts; (3) all equipment and inventory; and (4) all proceeds of any of the foregoing Accounts, property, rights and interests, as set forth in Section 4 of the Agreement, (excluding the Avoidance Actions for purposes of this Order, but subject to the right of the Factor to obtain inclusion of Avoidance Actions upon entry of the Final Order), all cash and non-cash proceeds, rents, products and profits of any of the foregoing.

The Factor Liens shall be effective automatically and immediately upon the entry of this Order, and, other than as set forth in this Order, no lien or security interest granted to the Factor under this Order shall be subordinated to or made *pari passu* with any other lien or

security interest created and/or perfected pursuant to 11 U.S.C. § 364(c) or (d) or otherwise. The Factor Liens arising hereunder shall be and hereby are fully perfected security interests, such that no additional steps need be taken by the Factor to perfect such interests. Any provision of any lease or other license, contract or other agreement that requires: (i) the consent or approval of one or more landlords or other parties; or (ii) the payment of any fees or obligations to any governmental entity, in order for any Debtor to pledge, grant, sell, assign, or otherwise transfer any such leasehold interest or the proceeds thereof or other Collateral related thereto shall have no force and effect with respect to the transactions granting the Factor a security interest in such leasehold interest, license, contract or agreement, or the proceeds of any assignment and/or sale thereof by the Debtor.

The Factor Liens and Super-Priority Claims and other rights and remedies granted to the Factor under this Order shall continue in the Chapter 11 Case and in any superseding case or cases for the Debtor under any chapter of the Bankruptcy Code, and such liens, security interests and claims shall maintain their priority as provided in this Order, until all the Factoring Obligations have been paid in full in cash.

11. Acknowledgement. The Debtor acknowledges, represents, stipulates and agrees that the Debtor has obtained all authorizations, consents and approvals required to be obtained from, and have made all filings with and given all notices required to be made or given to, all federal, state and local governmental agencies, authorities and instrumentalities in connection with the execution, delivery, performance, validity and enforceability of the Factoring Agreement;

12. Fees and Expenses. All fees, costs, charges and expenses required to be paid by the Debtor to the Factor under the Factoring Agreement are hereby approved. The

Debtor shall, within ten (10) days following receipt of a written summary invoice pay the Factor for its reasonable out-of-pocket fees (including professional fees), costs, charges and expenses, arising after the petition date that are payable or reimbursable under the Factoring Agreement. None of the Factor's costs, fees, charges, or expenses shall be required to be maintained in accordance with the U.S. Trustee guidelines, and no recipient of any such payment shall be required to file any interim or final fee application with the Court.

13. Recording and Filing Fees. All fees and costs and/or expenses payable by the Debtor in connection with the filing of mortgages and financing statements to confirm the perfection of the liens and security interests granted or authorized by this Order are hereby approved and shall be promptly paid in full by the Debtor without the necessity of the Debtor or the Factor filing any further application with the Court for approval or payment of such fees, costs and/or expenses.

14. Authority to Execute and Deliver Necessary Documents. The Debtor is hereby authorized and empowered to enter into and deliver the Factoring Agreement in substantially the form annexed to the Motion and UCC financing statements and mortgages or deeds of trust as necessary or appropriate and securing all of the Debtor's obligations under the Factoring Agreement. The Debtor is hereby further authorized, empowered and directed: (a) to perform all of its obligations under the Factoring Agreement; and (b) to perform all of its obligations under this Order, including, without limitation, the payment of all principal, interest, charges, fees, and the reimbursement of present and future reasonable costs and expenses (including without limitation, reasonable attorneys' fees and legal expenses) paid or incurred by the Factor as provided for in this Order of the Factoring Agreement, all of which shall be included and constitute part of the principal amount of the Factoring Obligations, be deemed

Super-Priority Claims having the same priority as all other Factoring Obligations hereunder and be secured by valid and perfected FactorLiens; and (c) to do and perform all other acts, to make, execute and deliver all other instruments, agreements and documents, which may be required or necessary for the Debtor to perform all of its obligations under this Order and the Factoring Agreement, without further order of the Court and pending the Final Hearing. The Factoring Obligations shall constitute valid and binding obligations of the Debtor enforceable against it, and its successors and assigns, in accordance with their terms and the terms of this Order.

15. Carve-Out. The Factor Liens and the Super-Priority Claims shall be subject to pay United States Trustee fees and professional fees allowed and payable under 11 U.S.C. §§ 330, 331 and 503 (collectively, the "Carve-Out Expenses.)

16. Limitation On Additional Surcharges. Subject to entry of the Final Order, except to the extent of the Carve-Out Expenses, no costs or expenses of administration or other surcharge, lien, assessment or claim incurred on or after the petition date of any person or entity shall be imposed against any of the Collateral or the Factor, nor shall the Collateral or the Factor be subject to surcharge by any party-in-interest for any amounts arising or accruing after the petition date pursuant to 11 U.S.C. §§ 506(c), 552(b) or 105(a) or similar principle of law.

17. Access to Information. The Debtor shall permit representatives, agents and/or employees of the Factor to have reasonable access to the Debtor's premises and its records during normal business hours (without unreasonable interference with the proper operation of the Debtor's business) and shall cooperate, consult with, and provide to such persons all such non-privileged information as they may reasonably request.

18. Successors and Assigns. The Factoring Agreement and the provisions of this Order shall be binding upon the Factor, the Debtor, and their respective successors and

assigns, and shall inure to the benefit of the Factor, the Debtor, and their respective successors and assigns including, without limitation, any trustee, responsible officer, examiner with expanded powers, estate administrator or representative, or similar person appointed in a case for the Debtor under any chapter of the Bankruptcy Code.

19. No Third Party Beneficiary. Except with respect to any of the Finance Parties, their delegates, successors and assigns, no rights are created hereunder for the benefit of any third party, any creditor or any direct, indirect or incidental beneficiary.

20. Binding Nature of Agreement. Each of the DIP Loan Documents to which the Debtor is and will become a party shall constitute legal, valid and binding obligations of the Debtor, enforceable against the Debtor in accordance with their terms. The Factoring Agreement has been or will be properly executed and delivered to the Factor by the Debtor. The rights, remedies, powers, privileges, liens and priorities of the Factor provided for in this Order and in the Factoring Agreement shall not be modified, altered or impaired in any manner by any subsequent order (including a confirmation order) or by any plan of reorganization or liquidation in the case or in any subsequent case under the Bankruptcy Code, unless and until the Factoring Obligations have first been paid in full in cash.

21. Subsequent Reversal or Modification. This Order is entered pursuant to § 364 of the Bankruptcy Code, granting the Factor all protections afforded by 11 U.S.C. § 364(e). If any or all of the provisions of this Order are hereafter reversed, modified, vacated or stayed, that action will not affect: (a) the validity of any obligation, indebtedness or liability incurred hereunder by the Debtor to the Factor prior to the date of receipt by the Factor of written notice of the effective date of such action; or (b) the validity and enforceability of any lien or priority authorized or created hereby or pursuant to the Factoring Agreement. Notwithstanding any such

reversal, stay, modification or vacatur, any post-petition indebtedness, obligation or liability

incurred by the Debtor to the Factor prior to written notice to each of them of the effective date

of such action shall be governed in all respects by the original provisions of this Order, and each

of them shall be entitled to all the rights, remedies, privileges and benefits granted herein and in

the DIP Loan Documents with respect to all such indebtedness, obligation or liability.

22. No Waivers.

(a)    This Order shall not be construed in any way as a waiver or

relinquishment of any rights that the Factor may have to bring or be heard on any matter

brought before this Court.

(b)    The rights and obligations of the Debtor and the rights, claims, liens,

security interests and priorities of the Factor arising under this Order are in addition to, and are

not intended as a waiver or substitution for, the rights, obligations, claims, liens, security

interests and priorities granted by the Debtor to the Factor pre-petition.

Without limiting the generality of the foregoing subparagraphs, the Factor may

petition this Court for any such additional protection it may reasonably require.

23. Conversion/Dismissal. If an order is entered: (a) dismissing this case under

11 U.S.C.§§ 305 or 1112 of the Bankruptcy Code or otherwise, (b) converting the Chapter 11

Case under 11 U.S.C. § 1112; or (c) appointing a chapter 11 trustee, an examiner with expanded

powers, or any other responsible person of office, such order shall provide that the liens, security

interests and Super-Priority Claims granted to the Factor in this Order shall continue in full force

and effect, shall remain binding on all parties-in-interest and shall maintain their priorities as

provided in this Order until all Factoring Obligations shall have been paid in full in cash, and that

this Court shall retain jurisdiction to the fullest extent permitted by law, notwithstanding such

dismissal, for purposes of enforcing the liens, security interests and Super-Priority Claims of the Factor.

24. Survival. The liens, lien priority, administrative priorities and other rights and remedies with respect to the Debtor granted to the Factor pursuant to the Factoring Agreement and this Order (specifically including, but not limited to, the existence, perfection and priority of the liens and security interests and the administrative priority provided) shall not be modified, altered or impaired in any manner by any other financing or extension of credit or incurrence of indebtedness by the Debtor (pursuant to 11 U.S.C. § 364 or otherwise), by any dismissal or conversion of the Chapter 11 Case, or by the confirmation of a plan of reorganization that does not: (a) contain a provision for termination of the total commitment and payment in full in cash of the Factoring Obligations on or before the effective date of such plan upon entry thereof unless otherwise agreed by the Factor; and (b) provide for the continuation of the liens and security interests granted to the Factor, unless otherwise agreed by the Factor, and the priorities thereof until the earlier of: (i) such plan effective date, and (ii) the date the Factoring Obligations are paid in full in cash and the total commitment is terminated.

25. Adequate Notice. The notice given by the Debtor of the Interim Hearing was given in accordance with Bankruptcy Rules 2002 and 4001(c)(2) and the local rules of this Court. Under the circumstances, no other or further notice of the request for the relief granted at the Interim Hearing is required. The Debtor shall promptly mail copies of this Order and notice of the Final Hearing to all parties entitled to notice. Any objection to the relief sought at the Final Hearing shall be made in writing setting forth with particularity the grounds thereof, and filed with the Court and served so as to be actually received no later than five days prior to the Final Hearing by the following: (a) counsel to the Debtor, Kline, Kline, Elliott & Bryant, P.C.,

720 NE 63rd Street, Oklahoma City, OK 73105 (Attn: Stephen W. Elliott); and (b) counsel to the Factor, Bryan Cave, LLP (Attn: Edward M. Zachary), Two North Central Avenue, #2200, Phoeniz, AZ 85004, with an additional copy to (c) Mee, Mee, Hoge & Epperson, PLLP (Attn: John W. Mee, III), 50 Penn Place, 1900 Northwest Expressway, Suite 1400, Oklahoma City, Oklahoma 73118. The Court shall conduct a Final Hearing on the Motion commencing on the _____ day of _________________, 2010 at ______ __m.

26. Retention of Jurisdiction. This Court shall retain jurisdiction over all matter pertaining to the implementation, interpretation and enforcement of this Order.

27. Binding Effect of Order. The terms of this Order shall be binding on any trustee appointed under chapter 7 or chapter 11 of the Bankruptcy Code.

28. Entry of Order; Effect. This Order shall take effect immediately upon execution, notwithstanding the possible application of Bankruptcy Rules 6004(g), 7062, 9014, or otherwise, and the Clerk of the Court is hereby directed to enter this Order on the Court's docket in the Chapter 11 case.

29. Pursuant to Rule 7052, F.R.Bankr.P., all findings of fact herein shall be construed as conclusions of law, and conclusions of law set forth herein shall be construed as findings of fact.

IT IS SO ORDERED.

# # #

Approved for entry:

/s/Matthew C. Goodin
Matthew C. Goodin, OBA 19327
Stephen W. Elliott, OBA #2685
G. David Bryant, OBA #01264
KLINE KLINE ELLIOTT & BRYANT, PC
720 N.E. 63rd Street
Oklahoma City, OK 73105
Telephone: (405) 848-4448
Facsimile: (405) 842-4539
mgoodin@klinefirm.org

ATTORNEYS FOR
THE DEBTOR IN POSSESSION,
PAUL TRANSPORTATION, INC.

# FACTORING AGREEMENT

THIS FACTORING AGREEMENT (the "Agreement") made and entered into this **MAY ____, 2010** (the "Effective Date") by and between **RTS FINANCIAL SERVICE, INC.**, ("Factor"), a Kansas Corporation; and **PAUL TRANSPORTATION, INC.** Debtor-in-Possession ("Assignor"), a CORPORATION, organized under the laws of the State of OKLAHOMA.

RECITALS

1. Assignor desires to sell to Factor all of its existing and future Accounts Receivable ("Accounts") arising from services performed in the regular course of Assignor's business; and

2. Factor desires to purchase certain of those Accounts, which Factor in its sole discretion deems acceptable for purchase, according to the terms and conditions provided in this Agreement.

3. Assignor is a debtor in Chapter 11 proceedings assigned case number __________________ (the "Case") pending in the United States Bankruptcy Court for the Western District of Oklahoma (the "Court"). The Case was commenced on May ____, 2010 (the "Petition Date"). Since the Petition Date, Assignor has been operating its business as a Debtor-in-Possession pursuant to Chapter 11 U.S.C. § 101 et. seq. (the "Bankruptcy Code").

4. This Agreement is, in all respects, subject to the approval of the Court, by Order issued in the Case.

5. This Agreement amends, supersedes and replaces the prior Agreement of Factor and Assignor dated June 16, 2009, to the extent this Agreement confers additional rights on Factor, but shall not adversely affect any rights Factor may have had under the Agreement dated June 16, 2009, including collection rights and security interests, all of which shall remain fully enforceable notwithstanding this Agreement.

In consideration of the above recitals and mutual covenants herein contained and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

**SECTION 1. DEFINITIONS**

An "Account" means any right to payment for services rendered by or on behalf of Assignor. "Account Debtor" means a person or other entity, which is obligated to pay the Account.

**SECTION 2. PURCHASE OF ACCOUNTS**

2.1 Assignor agrees to present to Factor for purchase, with recourse, all Accounts arising from the activities and services performed by Assignor.

2.2 Factor, in its sole discretion, may purchase such Accounts from Assignor as Factor determines to be acceptable. Assignor hereby agrees to sell, assign, transfer, convey and deliver to Factor, such Accounts as Factor shall elect to purchase. Assignor will notify each Account Debtor of the sale of its Account or Accounts to Factor and shall place a clear statement or legend, approved by Factor, on each such Account invoice, bill of lading, purchase order or statement, stating that such Account has been sold and assigned, and is payable to Factor at its office at 8601 Monrovia, Lenexa, Kansas 66215 or at such other address as Factor shall designate in writing. All remittances received by Assignor for payment of Accounts sold to Factor are the property of Factor, and Assignor shall hold such proceeds in trust for Factor, and shall immediately deliver to Factor, in the identical form, all payments received by Assignor on each such Account, together with all documents accompanying the remittance to Assignor. Assignor guarantees the timely payment of the monies and amounts represented by the assigned Accounts. Factor will not purchase Accounts representing services for which assignor did not in fact act as a Transportation Carrier.

**SECTION 3. PURCHASE PRICE AND FACTORING CHARGE; SECURITY RESERVES**

EXHIBIT

tabbies

2

3.1 The purchase price for each Account purchased by Factor hereunder shall be the net amount of such Account, less the Factor's fee, which fee shall be an amount equal to **ONE AND A HALF PERCENT (1.5%)** of such net amount. "Net amount" means the gross amount of the Account less any discount or allowance of any nature allowed to the Account Debtor.

3.2 Payment of the purchase price to Assignor shall be made as follows:

(a) Upon the presentation by Assignor to Factor of an acceptable bill of lading, rate confirmation, and invoice (submitted in duplicate) for an Account approved for purchase by Factor, and provided no claim or dispute shall then exist with the Account Debtor as to the Account, Factor will advance to the Assignor the purchase price of the Account, less a security reserve equal to **THREE AND A HALF PERCENT (3.5%)** of the net amount of the Account.

(b) Upon Factor's receipt of full payment of the invoice for the Account from the Account Debtor, and provided Assignor shall not otherwise be in default in any respect under this Agreement, Factor will remit to the Assignor the **3.5%** security reserve in complete and full payment of the purchase price. In all cases, Factor will retain its **1.5%** Factor's fee.

**SECTION 4. SECURITY INTEREST**

Assignor hereby grants to Factor as collateral, to secure all of the debts, liabilities and obligations of Assignor to Factor under this Agreement, including all costs and expenses incurred by Factor in connection with the enforcement of its rights under this Agreement, a security interest in the following property of Assignor: (a) all Accounts, wherever located or situated, and whether now existing or arising in the future, and whether now owned or at any time in the future acquired by Assignor, together with all proceeds and monies due or becoming due on such Accounts; all guaranties, insurance and security for such Accounts; all of Assignor's rights and interests in the goods giving rise to such Accounts, and the rights associated with or related or pertaining to such goods, including without limitation the right of stoppage in transit and any and all related insurance, any items substituted therefore as replacements and all additions thereto; (b) all of Assignor's chattel paper, instruments, general intangibles, securities, contract rights and insurance associated with or related to the Accounts; (c) all equipment and inventory; and (d) all proceeds of any of the foregoing Accounts, property, rights and interests. Factor in its own name, or Factor's collateral agent Parcus109 Trust in its name as the agent of Factor, may file financing statements and all amendments thereto describing as the collateral any or all of the foregoing collateral by any description Factor or its collateral agent deems appropriate in any jurisdiction or office Factor or its collateral agent deems appropriate to perfect Factor's security interest in foregoing collateral.

In the event of Assignor's breach of any warranty made in this Agreement or the Assignor's failure to observe or perform any of the provisions or obligations of this Agreement, Assignor shall be in default, and Factor may enforce payment and exercise any and all of the rights and remedies provided by Article 9 of the Uniform Commercial Code. In addition, upon default by Assignor, Factor shall also have the right to take all actions necessary to collect the Accounts directly from the Account Debtors.

**SECTION 5. REPURCHASE OF ACCOUNTS**

All Accounts purchased by Factor from Assignor are purchased with full recourse. If Assignor breaches any warranty or otherwise violates or defaults on any of its obligations hereunder, or if any Account purchased by Factor hereunder is not paid in full on or before the payment due date of such Account, then upon request by Factor, Assignor shall immediately repurchase such Account from Factor for an amount equal to the face amount of such Account (less any payments received by Factor on such Account from the Account Debtor), together with interest thereon at the rate of **ZERO%** per annum from the date of the assignment of such Account to Factor. Any security reserve held by Factor for such Account shall be released only in accordance with Section 3.2(b), and Factor shall in all events also be entitled to and shall retain its Factor's fee on the Account. Typically, Factor will require repurchase of any unpaid Account no later than 90 days after the Account invoice date, unless Factor, in its sole discretion chooses otherwise. However, in all cases, any unpaid Account must be repurchased by Assignor within 120 days after the

EXHIBIT 2

Account invoice date. Assignor shall not be relieved of its absolute repurchase obligation hereunder, even though the Account Debtor, whose Account Assignor must repurchase hereunder, was listed on Factor's debtor credit rating list.

**SECTION 6. REPRESENTATIONS AND WARRANTIES**

Assignor represents, covenants, warrants and agrees as follows:

6.1 Assignor is a corporation duly organized, existing and in good standing under the laws of the State of **OKLAHOMA** that the execution, delivery and performance of this Agreement are in every respect within its corporate powers and have been duly authorized by appropriate corporate action; and that this Agreement, when duly executed and delivered by the Assignor and the Factor, will constitute a legal, valid and binding agreement of the Assignor fully enforceable in accordance with its terms and conditions, subject to approval by the Court.

6.2 The Assignor's address set out in Section 14 of this Agreement is the address of Assignor's principal office and its sole place of business. Assignor shall give Factor immediate written notice of any change in the location of its principal office, the addition of any new place or places of business and their addresses, any name change or the addition of any name under which Assignor does business, or any change in the nature or status of Assignor's business or operations.

6.3 As to each Account purchased by Factor under this Agreement: (i) the Account is not yet past due, arose in the ordinary course of Assignor's business and represents a bona fide completed transaction; (ii) the title of Assignor to the Account is absolute and subject to no assignment, claim, lien or security interest, other than such assignment, claim, lien or security interest which has previously been disclosed by Assignor in writing or by email to Factor, to the attention of James Maurer or Marc Andreoli; (iii) the Account, as shown on Assignor's books and records and on any invoices, bills of lading or statements, delivered to Factor is a legally enforceable debt owed by Account Debtor to Assignor in its full face amount; (iv) no partial payment has been made by anyone on such Account; (v) Assignor has no knowledge that any set off, credit, allowance, adjustment, counterclaim or defense to such Account exists or will exist and no agreement has been made or will be made with any person or entity under which any deduction or discount may be claimed on such Account; and (vi) the Account is payable not more than thirty (30) days from the date of assignment of the Account to Factor.

6.4 Assignor shall execute any and all financing statements, Uniform Commercial Code forms or other documents or instruments which Factor deems necessary to protect its interest under this Agreement.

6.5 Assignor shall indemnify, defend and hold Factor harmless from and against any and all misrepresentations or breaches of warranty or other defaults hereunder by Assignor, and from any losses, expenses, attorneys fees or other costs incurred by Factor caused by or arising out of any such defaults or breaches of this Agreement by the Assignor and from any costs expenses or attorneys fees incurred by Factor in enforcing Factor's rights under this Agreement; from any dispute or claim resulting in liability, loss, expense, cost or attorneys fees caused by or arising out of the rejection of any work performed or services rendered by Assignor; or from any alleged claim, dispute, action, defense or set off of every kind and nature asserted by any Account Debtor.

6.6 The Assignor shall not, without the express written consent of the Factor, release, compromise, settle or adjust any Account purchased hereunder, or grant any discounts, allowances or credits thereon.

6.7 Assignor shall immediately notify Factor in the event that Assignor: (i) fails to timely make any deposit for or payment when due of all post-petition payments to any taxing or other governmental authority; and (ii) has any knowledge that any existing subordination agreement to which Factor is a party is not fully enforceable.

**SECTION 7. POWER OF ATTORNEY**

EXHIBIT
tabbies
2

7.1 In order to carry out this Agreement, and to avoid unnecessary notification of Account Debtors, Assignor irrevocably appoints Factor as Assignor's true and lawful attorney with the limited power and right to: (a) invoice or bill for, collect, receive, and deposit to Assignor's bank accounts any and all amounts which may be due or become due to Assignor from Account Debtors, and to use Assignor's name for purposes of billing and collection of any and all amounts due; (b) receive, accept, open, dispose of and redirect any and all mail addressed to Assignor; (c) negotiate any checks received in payment of Accounts whether payable to Assignor or Factor or both, and endorse the name of Assignor on any checks or other evidences of payment or other instruments or documents that may come into the possession of Factor on Accounts purchased by Factor and on any invoices or other documents or instruments relating to any of the Accounts or relating to any collateral or security hereby granted by Assignor to Factor; (d) in Assignor's name, or otherwise, demand, make claim for. sue for, collect, grant extensions, compromise, discharge, and get or give releases for any and all monies or funds due or to become due on Accounts; (e) execute and deliver receipts or acknowledgments to Account Debtors for such amounts due which shall be binding upon Assignor and Factor; (f) notify Account Debtors of the sale of Accounts to Factor and notify and instruct Account Debtors, in Assignor's name, of the address and procedures for making payments on any Accounts that are sold to Factor or which constitute collateral hereby granted by Assignor to Factor; (g) take all steps necessary to insure payment of such amounts and monies due, and do any and all things in Assignor's name necessary or proper to carry out the purposes intended by this Agreement; (h) file financing statements and all amendments thereto, describing as collateral any or all of the collateral described in Section 4 hereof by any description Factor deems appropriate in any jurisdiction or office Factor deems appropriate to perfect its security interest in the collateral described in Section 4 hereof; and (i) only after twenty four (24) hours prior written or email notice to the assignor, to the attention of Troy Paul with a copy to Stephen Elliott and Matthew Goodin, attorneys for the Assignor, to initiate debit or credit entries through the Federal Reserve Automated Clearing House System (ACH) to any deposit account maintained by Assignor wherever located in order to satisfy any obligations of Assignor to Factor under this Agreement. It is understood that this power of attorney is coupled with an interest, and is irrevocable until all obligations of Assignor to Factor under this Agreement have been satisfied.

7.2 Exercise of the foregoing powers shall be in the sole and absolute discretion of Factor, but Factor shall have no obligation to exercise any of the foregoing powers. Nothing contained in this Agreement shall in any way require Factor to initiate or become a party to any litigation or other legal proceedings.

7.3 The Factor shall not, under any circumstances, or in any event whatsoever, have any liability for any error, omission or delay of any kind occurring in the collection, payment or settlement of any Account or of any instrument received in full or in part payment thereof or in dealing with any lien, security or guaranty of any such Account

**SECTION 8. BOOKS, RECORDS AND FINANCIAL STATEMENTS**

All of Assignor's books, accounts, ledgers, correspondence, records and papers pertaining to all of the Assignor's Accounts and business shall be accurately and properly prepared and maintained by Assignor and shall disclose the sale of Accounts purchased by Factor. All such books, ledgers, accounts, records, correspondence and papers shall be opened by Assignor at all reasonable times for Factor's inspection, audit and copying upon no less that forty eight (48) hours written or email notice to the Assignor, to the attention of Troy Paul.. Assignor shall, not less often than quarter annually, furnish Factor with financial statements, including income statements and balance sheets showing Assignor's financial condition. Assignor shall also provide Factor with annual financial statements certified by an independent accountant acceptable to Factor.

**SECTION 9. ATTORNEY'S FEES AND EXPENSES**

If Factor retains the services of an attorney to enforce any obligation of Assignor to Factor under this Agreement, Factor shall be entitled to recover from Assignor its reasonable attorneys' fees, court costs and expenses, regardless of whether or not an action is commenced.

**SECTION 10. GOVERNING LAW AND CONSENT TO JURISDICTION**

EXHIBIT
tabbies
2

10.1 This Agreement is accepted and made in the state of Kansas and this Agreement and the rights of the parties hereunder shall be interpreted under and governed as to construction, enforcement and validity by the laws of the state of Kansas.

10.2 Factor and Assignor agree that any legal suit, action or proceeding arising out of or related to this Agreement shall be instituted, heard and resolved solely and exclusively in the Court. Factor and Assignor submit to the jurisdiction of the Court for the purpose of deciding any questions, disputes or causes, arising under this Agreement.

**SECTION 11. TERMINATION**

11.1 This Agreement shall have an initial term of six (6) months from the Effective Date hereof (the "Original Term"), and shall automatically renew for successive periods of six (6) months ("Renewal Periods"), unless sooner terminated as hereinafter provided. Either party hereto may terminate this Agreement as of the expiration of the Original Term or any Renewal Term by giving Factor prior written notice of its intention to so terminate. Such notice shall be given by the terminating party to the other party at least thirty (30) days, but not more than ninety (90) days, prior to the expiration of the Original Term or any Renewal Term. Either party may terminate this Agreement at any time upon thirty (30) days prior written notice to the other party. Notwithstanding the foregoing, this Agreement shall terminate immediately: (i) at the option of Factor upon Assignor's failure to pay in full when due any and all post-petition obligations owing to any taxing or other governmental authority, or (ii) at the option of either party upon a breach of this Agreement by the other party.

11.2 All of the Assignor's covenants, warranties and agreements under this Agreement made to Factor, and all rights and remedies of the Factor under this Agreement, shall survive the termination of this Agreement and shall continue in full force and effect until all Accounts purchased hereunder are paid in full and all debts and obligations to of Assignor to Factor hereunder have been satisfied in full. Upon termination each party shall remain liable to the other party for any and all unpaid balances, Accounts, and for all other amounts and monies as may be owed to either Party under the terms and conditions of this Agreement. Upon termination, any security reserve and any other funds or monies from any source whatsoever which would otherwise be owing to Assignor by Factor may be retained by Factor until such time as all obligations and debts of Assignor to Factor have been fully satisfied, and Factor's security interest provided in Section 4 hereof shall continue until all obligations of Assignor to Factor are paid in full. Factor shall have the right, in its sole discretion, to set off against the security reserve and any other sums owing to Assignor by Factor all obligations and debts of Assignor to Factor.

**SECTION 12. MODIFICATION, SEVERABILITY, SUCCESSORS AND ASSIGNS, ETC.**

This Agreement may be modified only by written instrument signed by the parties hereto. In the event that any one or more of the provisions contained in this Agreement should be held by any court of competent jurisdiction to be unenforceable, the holding or decision shall not affect or impair any of the other provisions of this Agreement. This Agreement supersedes all prior agreements between the parties (except as set forth in the Recitals hereto) , and shall bind the successors and assigns of Assignor and shall inure to the benefit of the successors and assigns of Factor. As used in this Agreement, the singular shall be deemed to include the plural and vice versa, and the neuter shall be deemed to include the masculine or feminine, and vice versa.

**SECTION 13. NO DELAY**

13.1 No delay or omission on the part of Factor in enforcing or exercising any right hereunder shall operate as a waiver of such right or any other right. The waiver by Factor of the breach by Assignor of any provision of this Agreement, or of Assignor's compliance with such provisions, shall not be construed as a waiver of any other breach or of the provision itself. No waiver or modification of the Agreement shall be chargeable against Factor unless in writing, signed by Factor and delivered by Factor to Assignor.

EXHIBIT 2

13.2 The waiver, compromise, discharge, extension or release by Factor, of any duty or obligation of any Account Debtor shall not reduce, diminish, limit, or restrict in any way Assignor's obligations and liabilities to Factor.

**SECTION 14. NOTICE**

Notices under this Agreement shall be in writing and mailed postage prepaid, registered or certified mail, return receipt requested, or sent by overnight delivery service, or by FAX transmission to the recipient's FAX machine, addressed to the addressees set forth below, or to such other address as either party notifies the other in writing. All such notices shall be effective upon receipt if delivered by hand or FAX or overnight delivery service; otherwise upon three (3) business days after the notice is placed in the U.S. Mail. Addresses for notices are as follows:

In the case of Assignor, to:

**PAUL TRANSPORTATION, INC.**
**301 W. MAINE**
**ENID, OK 73701**
**TEL: (580) 977-2973**
**FAX: (580) 977-2956**

**With a copy to:**

**KLINE, KLINE, ELLIOTT & BRYANT, PC**
**Attn: Stephen W. Elliott**
**720 NE 63rd STREET**
**OKLAHOMA CITY, OK 73105**
**TEL: (405) 848-4448**
**FAX: (405) 842-4539**

In the case of Factor, to:

RTS Financial, Inc.
8601 MONROVIA
LENEXA, KS 66215
TEL: (800) 860-7926
FAX: (913) 492-1998

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed by their duly authorized officers, as of ______________, 2010.

ASSIGNOR:

**PAUL TRANSPORTATION, INC.**

ATTEST:

______________________
Title: Business Development & Marketing Manager

By: ______________________
TROY PAUL
PRESIDENT

FACTOR:

**RTS FINANCIAL SERVICE, INC.**

ATTEST:

______________________
MARTIN J. RYAN
Title: VICE-PRESIDENT

By: ______________________
WILLIAM M. RYAN
Title: PRESIDENT

EXHIBIT
2

______________, 2010

**ATTN: Accounts Payable Manager**

Effective with the presentation of this letter be advised that **PAUL TRANSPORTATION, INC.** has retained the services of RTS Financial Service, Inc. in an effort to give us greater efficiency in our credit and collection departments.

Therefore, effective with presentation of **PAUL TRANSPORTATION, INC.** freight bills, all invoices will be processed through RTS Financial Service, Inc., **thus assigning all payments to RTS Financial Service, Inc. All payments must be mailed directly to**:

*RTS Financial Service, Inc.*
**P.O. Box 932001**
**Kansas City, Mo 64193-2001**
**(800) 860-7926**

Please promptly notify RTS Financial Service, Inc. of any claims, returns, questions, or dispute which may affect payment. If you pay anyone other than RTS Financial Service, Inc. without the prior written consent of RTS Financial Service, Inc., you will be required by law to pay the amount again to RTS Financial Service, Inc. We ask that you please provide the following information with your payment remittance:

1. The carrier name – **"PAUL TRANSPORTATION, INC."**
2. The invoice number(s)
3. Individual invoice amount

Your compliance with this notification is greatly appreciated. If you have any questions regarding the program, please do not hesitate to contact RTS @ 800-860-7926. This assignment letter may only be revoked by a writing signed by **both RTS FINANCIAL SERVICE, INC.** and **PAUL TRANSPORTATION, INC.**

Sincerely,

**Marc Andreoli, Operations**
**RTS FINANCIAL SERVICE, INC**

**TROY PAUL**
**PAUL TRANSPORTATION, INC.**
**301 W. MAINE**
**ENID, OK 73701**

Please continue to send all 1099 tax forms directly to: PAUL TRANSPORTATION, INC.

EXHIBIT
tabbies
2

# GUARANTY

For valuable consideration and to induce **RTS FINANCIAL SERVICE, INC. ("RTS")** to enter into the Factoring Agreement dated ____________, **2010** ("the Factoring Agreement") with **PAUL TRANSPORTATION, INC. ("ASSIGNOR")**, we the undersigned, do hereby jointly and severely guaranty to **RTS**, its successors and assigns the full, prompt and complete performance by **ASSIGNOR** of all of the provisions, conditions, covenants and agreements contained in the Factoring Agreement, including the full and complete payment of all monies that become due thereunder to **RTS** by **ASSIGNOR** and do hereby waive all notice of default by **ASSIGNOR** and notice of acceptance of this guaranty by **RTS**, and do hereby consent to any extension of time that may be given by **RTS** to **ASSIGNOR** of time of payment or performance. This guaranty is not limited to any particular period of time, but shall continue until all of the terms, covenants, and conditions of the Factoring Agreement have been fully and completely performed by **ASSIGNOR** and the undersigned shall not be released of any obligation or liability hereunder so long as there is any claim of **RTS** against **ASSIGNOR** arising out of the Factoring Agreement that has not been settled or discharged in full. The undersigned waive any right to require **RTS** to proceed against **ASSIGNOR**, the account debtors or customers of **ASSIGNOR** or any other person, or to proceed against or exhaust any security or pursue any other remedy in **RTS'** power. Whether or not suit be initiated, the undersigned agree to pay reasonable attorneys' fees and all other costs and expenses incurred by **RTS** in enforcing this guaranty and in any actions or proceedings arising out of or relating to the guaranty. This guaranty shall be governed and construed in accordance with the laws of the state of Kansas. The undersigned hereby consent to the sole and exclusive jurisdiction of any state or Federal court within the state of Kansas in connection with the enforcement of this guaranty.

Troy Paul
TROY PAUL
~~301 W. CARRIER ROAD~~ P.O. Box 5006 TP
ENID, OK 73703

**BE IT KNOWN** that on this 3 day of May, 2010 the above named persons executed the foregoing Guaranty in my presence as their free act and deed.

Wendy G
Notary Public
My Commission expires on 9-18-13.

(Seal)

WENDY GRIFFIN
Notary Public, State of Oklahoma
Commission # 09007949
My Commission Expires September 18, 2013

667277.2 [0176234]

EXHIBIT
2

_____________, 2010

**ATTN: Accounts Payable Manager**

Effective with the presentation of this letter be advised that **PAUL TRANSPORTATION, INC.**, has retained the services of RTS Financial Service, Inc. in an effort to give us greater efficiency in our credit and collection departments.

Therefore, effective with presentation of **PAUL TRANSPORTATION, INC.** freight bills, all invoices will be processed through RTS Financial Service, Inc., **thus assigning all payments to RTS Financial Service, Inc. All payments must be mailed directly to**:

*RTS Financial Service, Inc.*
**P.O. Box 932001**
**Kansas City, Mo 64193-2001**
**(800) 860-7926**

Please promptly notify RTS Financial Service, Inc. of any claims, returns, questions, or dispute, which may affect payment. If you pay anyone other than RTS Financial Service, Inc. without prior written consent, you will be required by law to pay the amount again to RTS Financial Service, Inc. We ask that you please **sign and return a copy of this letter to RTS Financial Service, Inc. as your acknowledgment of the aforementioned "Notification of Assignment."**

Your compliance with this notification is greatly appreciated. If you have any questions regarding the program, please do not hesitate to contact RTS @ 800-860-7926. This assignment letter may only be revoked by a writing signed by **both RTS FINANCIAL SERVICE, INC.** and **PAUL TRANSPORTATION, INC.**

Sincerely,

| | |
|---|---|
| _______________________ | _______________________ |
| **Marc Andreoli, Operations** | **TROY PAUL** |
| **RTS FINANCIAL SERVICE, INC** | **PAUL TRANSPORTATION, INC.** |
| | **301 W. MAINE** |
| | **ENID, OK 73701** |

ACCOUNTS PAYABLE DEPARTMENT

By receipt of this letter, I acknowledge assigning the payment of receivables direct to R.T.S. Financial Service.

Company Name_______________________

Address_______________ City/State/Zip_______________

Acknowledged By: _______________________
SIGNATURE TITLE DATE

Please print name: _______________________

FAX TO: (913) 492-1998

Please continue to send all 1099 tax forms directly to PAUL TRANSPORTATION, INC.

667277.2 [0176234]

EXHIBIT 2