## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

In re:                                          )
                                                )
PAUL TRANSPORTATION, INC.,                      )          Case No. 10-13022-NJ
SSN or Tax ID No. 71-092181                     )              (Chapter 11)
                                                )
        Debtor.                                 )

## PAUL TRANSPORTATION, INC.'S
## PLAN OF REORGANIZATION

**THIS IS NOT A SOLICITATION OF ACCEPTANCES OR REJECTIONS
OF THE PLAN OF REORGANIZATION. ACCEPTANCES AND REJECTIONS
MAY NOT BE SOLICITED BY ANY PARTY UNTIL THE DISCLOSURE
STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT.**

Stephen W. Elliott, OBA #2685
Matthew C. Goodin, OBA #19327
Kline, Kline, Elliott & Bryant, P.C.
720 N. E. 63rd Street
Oklahoma City, Oklahoma 73105
Telephone: (405) 848-4448
Telefacsimile: (405) 842-4539
selliott@klinefirm.org

ATTORNEYS FOR PAUL TRANSPORTATION, INC.,
DEBTOR IN POSSESSION

December 15, 2010

## TABLE OF CONTENTS

INTRODUCTION .......................................................... Page 1

DEFINITIONS ............................................................ Page 2

PRIORITY CLAIMS UNDER CODE §§ 507(a)(2), (3), and (8) ................... Page 5

CLASSIFICATION OF CLAIMS AND INTEREST ............................. Page 6

CLASSES OF CLAIMS AND INTERESTS IMPAIRED .......................... Page 9

TREATMENT OF CLASSES ............................................... Page 9
    General Treatment Provisions ...................................... Page 9
        Payments ..................................................... Page 9
        Delivery of Distributions in General ............................ Page 9
        Taxes in Connection with Distributions ......................... Page 10
        Undeliverable Distributions ................................... Page 10
        Unclaimed Undeliverable Distributions ......................... Page 11
        No De Minimis Distributions ................................... Page 11
        Interest ...................................................... Page 11
        Lien Retention ............................................... Page 12
        Post-Confirmation Date Insurance on Collateral .................. Page 12
        Post-Confirmation Date Maintenance of Collateral. ............... Page 12
        Certain Post-Confirmation Date Taxes .......................... Page 12
        Prepayment. .................................................. Page 13
        Misclassified or Unclassified Claims ............................ Page 13
        Disputed Claims. .............................................. Page 13
        Default ...................................................... Page 14
    Specific Treatment Provisions ..................................... Page 15

MEANS FOR PERFORMING THE PLAN AND MANAGEMENT
OF THE REORGANIZED DEBTOR SHOULD CLASS 22 ACCEPT THE PLAN .... Page 23

MEANS FOR PERFORMING THE PLAN AND MANAGEMENT
OF THE REORGANIZED DEBTOR AND NEW PAUL SHOULD
CLASS 22 REJECT THE PLAN ........................................... Page 25

CONTEMPLATED COMPENSATION FOR
SERVICES, COSTS, AND EXPENSES ...................................... Page 29

EXECUTORY CONTRACTS AND UNEXPIRED LEASES ..................... Page 31

RETENTION OF JURISDICTION .......................................... Page 34

MODIFICATION OF THE PLAN .......................................... Page 35

DISCHARGE ......................................................... Page 35

MISCELLANEOUS .................................................... Page 35
    Headings ..................................................... Page 35
    Notices ...................................................... Page 35
    Setoff, Recoupment and Other Rights ........................... Page 36
    Disbanding the Creditors' Committee ........................... Page 37
    Special Tax Provisions ........................................ Page 37
    Cram Down .................................................... Page 37
    No Admission Against Interest ................................. Page 38
    Number and Gender ............................................ Page 38

EXHIBIT A (Assumed Executory Contracts and Unexpired Leases)

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

In re:                                        )
                                              )
PAUL TRANSPORTATION, INC.,                    )          Case No. 10-13022-NJ
Tax ID No. 71-092181                          )              (Chapter 11)
                                              )
        Debtor.                               )

## PAUL TRANSPORTATION, INC.'S PLAN OF REORGANIZATION

### INTRODUCTION

Paul Transportation, Inc. (the "Debtor") filed its petition for relief under Chapter 11 of the Code on May 18, 2010. Since then, the Debtor has been a Debtor in Possession.

Kline, Kline, Elliott & Bryant, P.C., prepared this Plan on behalf of the Debtor in Possession. The Plan includes alternative treatments, dependent on whether Class 22, which is the Class of Unsecured Claims of more than $10,000, accepts or rejects the Plan.

If Class 22 accepts the Plan, the Debtor in Possession proposes that Priority Claims and Secured Claims will ultimately be paid in full, Unsecured Claims of $10,000 or less and Unsecured Claims voluntarily reduced to $10,000 will receive 35 cents on the dollar on or about the Plan Effective Date, Unsecured Claims of more than $10,000 will ultimately receive 40 cents on the dollar, without interest, and the Interest Holder will retain his Pre-Petition equity security interest.

Should Class 22 reject the Plan, the Debtor in Possession proposes that Claimants holding Priority Claims and Secured Claims will ultimately be paid in full, Claimants holding Unsecured Claims will receive a pro-rata distribution of one hundred percent (100%) of the equity securities

of the Reorganized Debtor, and the Interest Holder's Pre-Petition equity security interest will be

canceled and he will not receive or retain anything on account of his Pre-Petition equity security

interest.

If the Plan is not confirmed under Code § 1129(a):

the Case could be dismissed;

any Party in Interest could submit another plan;

the Debtor in Possession could request the Court to confirm this
Plan under Code § 1129(b) as to any dissenting Class, which the
Debtor in Possession intends to request as to any dissenting Class;
or

the Case could be converted to a case under Chapter 7 of the Code,
which would ultimately result in the Estate's assets being sold and
the sales proceeds being distributed according to law.

## DEFINITIONS

Terms defined in the Code have the same meanings in this Plan, unless otherwise

indicated. Defined terms, whether defined in the Plan or in the Code, are capitalized in the Plan.

Bar Date: Shall mean July 23, 2010, which was the date established by the Court as the last date

for Creditors to file proofs of claim in the Case.

Case: Shall mean the Chapter 11 bankruptcy case filed in the Court by Paul Transportation, Inc.,

on May 18, 2010.

Claim: Shall have the same meaning it does under the Code and shall include any and all

liabilities arising from events or circumstances occurring before the Confirmation Date.

Claimant: Shall mean the holder of a Claim.

Code: Shall mean 11 U.S.C. § 101 *et seq.* as amended and effective.

Collateral: Shall mean Property of the Estate and property of the Debtor that secures an allowed

Secured Claim. Collateral shall also mean Property of the Estate and property of the Debtor that

vests in the Reorganized Debtor (or New Paul should Class 22 reject the Plan) on the Plan

Effective Date.

Creditors' Committee: Shall mean the Official Committee of Unsecured Creditors appointed in

the Case by the U.S. Trustee under Code § 1102.

Confirmation Date: Shall mean the date the order confirming the Plan is entered by the Court.

Court: Shall mean the United States Bankruptcy Court for the Western District of Oklahoma.

Cure Payment: Shall mean the payment of cash and/or the distribution of other property (as the

parties may agree or the Court may order), as necessary to cure defaults under an executory

contract or unexpired lease of the Debtor and compensate the non-Debtor party to such executory

contract or unexpired lease for any actual pecuniary loss to such party resulting from such

defaults so that the Debtor in Possession may assume the contract or lease under Code § 365(a).

Debtor: Shall mean Paul Transportation, Inc.

Debtor in Possession: Shall mean Paul Transportation, Inc., from and after the Petition Date.

Disbursing Agent: Shall mean, as the context requires, either the Reorganized Debtor, New Paul,

or both, dependent on whom is to make the disbursement under the Plan.

Disputed Claim: Shall mean a Claim:

> not evidenced by a proof of claim filed on or before the Bar Date;
>
> evidenced by a proof of claim that is the object of an unresolved
> objection, motion for estimation, or motion for valuation;
>
> not listed in the Schedules;

listed in the Schedules as disputed, contingent, or unliquidated; or

listed in the Schedules without any indication that it is disputed, contingent, or unliquidated, but the Claim is nonetheless the object of an unresolved objection, motion for estimation, or motion for valuation.

Effective Date: Shall mean the fifteenth (15th) day after the Confirmation Date.

Estate: Shall mean the Estate created by Code § 541.

Interest Holder: Shall mean the holder of the equity interest in the Debtor.

New Paul: Shall mean the Oklahoma limited liability company or Sub-Chapter S corporation to be formed and wholly-owned by Troy Paul, which shall pay Priority Claims and Secured Claims and perform under assumed and assigned executory contracts and unexpired leases as provided in the Plan should Class 22 reject the Plan. New Paul shall be considered as a party in interest to this Case entitled to be heard on all matters.

Plan: Shall mean this Plan of Reorganization in its present form and as it may be modified or amended.

Post-Petition: Shall mean after the time on May 18, 2010, that the Debtor filed its petition for bankruptcy relief.

Pre-Petition: Shall mean before the time on May 18, 2010, that the Debtor filed its petition for bankruptcy relief.

Priority Claim: Shall mean all Claims that are entitled to priority under Code § 507.

Professional Fee Claim: Shall mean a Claim under Code §§ 327, 328, 330, 331, 503, or 1103 for compensation for professional services rendered or expenses incurred on behalf of the Estate

either by one of the Debtor in Possession's professionals or one of the Creditors' Committee's professionals.

Property of the Estate: Shall mean property of the Estate created by Code § 541.

Proponent: Shall mean Paul Transportation, Inc.

Reorganized Debtor: Shall mean Paul Transportation, Inc., from and after the Effective Date.

Rules: Shall mean the Bankruptcy Rules approved under 28 U.S.C. § 2075.

Schedules: Shall mean the schedules of assets and liabilities filed in the Case and all amendments to the schedules of assets and liabilities filed in the Case.

Secured Claim: Shall have the meaning it does under the Code, but only a Claim secured by a valid, unavoidable lien or setoff right against Property of the Estate shall be a Secured Claim. All liens securing a Claim that is not a Secured Claim shall be deemed void on the Effective Date.

Unsecured Claim: Shall mean all Claims except Priority Claims and Secured Claims.

## PRIORITY CLAIMS UNDER CODE §§ 507(a)(2), (3), and (8)

Unless otherwise provided in the Plan or agreed, allowed Priority Claims under Code § 503(b) and each allowed Priority Claim under Code §§ 507(a)(2) and (3) shall be treated in accordance with Code § 1129(a)(9)(A). However, obligations incurred by the Debtor in Possession in the ordinary course of business will be paid in accordance with the agreement reached when those obligations were incurred.

Each allowed Priority Claim under Code § 507(a)(8) shall bear interest at the rate as of the Confirmation Date required by Code § 511 and, except as otherwise provided in the Plan,

shall be paid in equal monthly payments in an amount sufficient to pay it and accrued interest in equal payments over a time period not to exceed five (5) years after the Petition Date.

Payments on Priority Claims under Code §§ 507(a)(2), (3), and (8) shall be made on the 8th day of the month, commencing the first full-calendar month after the Effective Date.

If Class 22 rejects the Plan, any unencumbered cash, accounts receivable, proceeds from the successful prosecution of any causes of action vesting in the Reorganized Debtor, net of the attorneys' fees and costs of prosecuting those causes of action, and the proceeds from the liquidation of any other unencumbered property vesting in the Reorganized Debtor, net of the fees and expenses of the liquidation, shall be immediately remitted by the Reorganized Debtor to pay the unpaid Priority Claims under Code §§ 507(a)(2), (3), and (8).

## CLASSIFICATION OF CLAIMS AND INTEREST

The Claims and interests are classified as follows:

**Class 1**: All allowed Priority Claim under Code § 507(a)(4)

**Class 2**: The allowed Priority Claim under Code § 507(a)(5) held by The Paul Transportation, Inc. 401(k) Plan, Intrust Bank, Trustee

**Class 3**: The allowed Secured Claim held by AFCO (Account No. xxx4956-11)

**Class 4**: The allowed Secured Claim held by Brown & Brown of Central OK

**Class 5**: The allowed Secured Claim held by Citizens Bank of Oklahoma (Note No. 5091300)

**Class 6**: The allowed Secured Claim held by Commercial Credit Group, Inc.

**Class 7**: The allowed Secured Claim held by GMAC (Contract No. G2228; Account No. xxx0864)

**Class 8**: The allowed Secured Claim held by GMAC (Contract No. G1227; Account No. xxx9185)

**Class 9**: The allowed Secured Claim held by Indiana Department of Revenue

**Class 10**: The allowed Secured Claim held by National American Insurance Co.

**Class 11**: The allowed Secured Claim held by Paccar Financial Corp (Account 100-651-151-5743711)

**Class 12**: The allowed Secured Claim held by Paccar Financial Corp (Account 100-651-151-5754130)

**Class 13**: The allowed Secured Claim held by Paccar Financial Corp (Account 100-651-151-5817291)

**Class 14**: The allowed Secured Claim held by Paccar Financial Corp (Account 100-651-151-105729305)

**Class 15**: The allowed Secured Claim held by Trans Advantage, Inc. (Note No. 60009356) (Note 1)

**Class 16**: The allowed Secured Claim held by Trans Advantage, Inc. (Note No. 60008975) (Note 2)

**Class 17**: The allowed Secured Claim held by Transport International Pool, Inc. (Account 1) (021-0633849-002)

**Class 18**:  The allowed Secured Claim held by Transport International Pool, Inc. (Account 4) (021-0633849-005)

**Class 19**:  The allowed Secured Claim held by Transport International Pool, Inc. (Account 5) (021-0633849-006))

**Class 20**:  The allowed Secured Claim held by RTS Financial Service, Inc.

**Class 21**: All allowed Unsecured Claims that are equal to, less than, or voluntarily reduced by the Claimant to, $10,000.  To be effective, the election to voluntarily reduce a Claim to $10,000 and have it treated in this Class rather than Class 22 must be made in writing on the Claimant's ballot and must be served on counsel for the Debtor in Possession within the time fixed for balloting on the Plan.  Any Claimant electing to have its Claim treated in this Class shall be deemed to have accepted the Plan.  Claimants holding Claims in this class may opt out of this Class and into Class 22.  The election to opt out of this Class and into Class 22 must be made in writing on the Claimant's ballot and must be served on counsel for the Debtor in Possession within the time fixed for balloting on the Plan.  Should Class 22 reject the Plan, all Class 21 Claims shall be treated as Class 22 Claims, and shall be deemed to have rejected the Plan.

**Class 22**:  All allowed Unsecured Claims of more than $10,000 that are not voluntarily reduced to $10,000 and treated under Class 21, and all allowed Unsecured Claims held by Claimants who timely elect to opt out of Class 21 and into this Class.  To be effective, the election to voluntarily reduce a Claim to fall within Class 21 must be made in writing on the

Claimant's ballot and must be served on counsel for the Debtor in Possession within the time
fixed for balloting on the Plan.

**Class 23**: The allowed equity security interest held by the Interest Holder.

## CLASSES OF CLAIMS AND INTERESTS IMPAIRED

All Classes of Claims and interests are impaired under the Plan, except Class 20 which is
unimpaired.

## TREATMENT OF CLASSES

### General Treatment Provisions

#### Payments.

Unless otherwise provided under the Specific Treatment Provisions of the Plan or on

Exhibit A, payments under the Plan shall:

> be made monthly;
>
> commence on the 5th day of the first full-calendar month after the
> Effective Date; and
>
> continue on the 5th day of each month thereafter until all payments
> proposed, including accrued interest, if any, have been made.

Should a payment due date fall on a weekend or legal holiday, the payment shall be due
the next business day.

**Delivery of Distributions in General**. Distributions to each holder of an allowed Claim
shall be made by mail as follows: (a) at the address set forth on the proof of Claim filed by such
holder of an allowed Claim; (b) at the address set forth in any written notice of address change
delivered to the Debtor in Possession or the relevant Disbursing Agent after the date of any

related proof of Claim; or (c) at the address reflected in the Schedules if no proof of Claim is filed and the Debtor in Possession or the relevant Disbursing Agent has not received a written notice of a change of address. To the extent the Debtor in Possession or the relevant Disbursing Agent has no current address as to the holder of an allowed Claim, the relevant Disbursing Agent shall withhold the remittance of any distribution to such holder unless and until the relevant Disbursing Agent is notified in writing of such holder's then-current address.

**Taxes in Connection with Distributions**. In making cash distributions under the Plan, the relevant Disbursing Agent shall comply with all tax withholding and reporting requirements imposed on it by any governmental unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements. The relevant Disbursing Agent may withhold the entire cash distribution due to any holder of an allowed Claim until such time as such holder provides the necessary information to comply with any withholding requirements of any governmental unit.

**Undeliverable Distributions**. If a distribution is remitted to the holder of any allowed Claim as provided in the Plan and is returned as undeliverable, no further distribution shall be made to such holder unless and until the relevant Disbursing Agent is notified in writing of such holder's then-current address. Subject to the other provisions of the Plan, undeliverable distributions shall remain in the possession of the relevant Disbursing Agent pursuant to this paragraph until such time as a distribution becomes deliverable. All undeliverable cash distributions will be held in unsegregated, interest-bearing bank accounts for the benefit of the persons entitled to such distributions, and those persons will be entitled to any interest actually

earned on account of the undeliverable distributions, provided the distributions are claimed timely.

**Unclaimed Undeliverable Distributions**. Any holder of an allowed Claim who does not assert a claim in writing for any undeliverable distribution within two (2) years after such distribution was first made shall no longer have any claim to, or interest in, such undeliverable distribution, and shall be forever barred from receiving any distributions under the Plan, or from asserting a Claim against the Debtor, the Estate, the Reorganized Debtor, New Paul, or their respective properties, and the Claim giving rise to the undeliverable distribution will be barred. Any undeliverable distributions on allowed Claims that are not claimed timely as provided herein will be retained by the relevant Disbursing Agent who was to have made the distribution as its property.

**No *De Minimis* Distributions**. Notwithstanding anything to the contrary in this Plan, no cash payment of less than $5 will be made to any entity. Likewise, no fractional equity securities in the Reorganized Debtor will be issued; if equity securities are to be issued under the Plan, the securities issued will be rounded to the next whole share that is greater than zero. No consideration will be provided *in lieu* of the *de minimis* distributions that this Section relieves the Disbursing Agent from making.

**Interest**.

Unless otherwise provided, the interest proposed on each Class of Claims shall:

be simple interest;

begin to accrue on the Effective Date and continue to accrue until all payments proposed have been made to the Class;

accrue only on the principal amount of the Claims in the Class; and

be calculated on the basis of the actual number of days elapsed over a year of 365 days.

**Lien Retention**.

Each Claimant that holds a Secured Claim shall retain its lien to the extent of the allowed amount of its Secured Claim.

**Post-Confirmation Date Insurance on Collateral**.

The Reorganized Debtor (or New Paul should Class 22 reject the Plan) shall maintain in force at all times insurance of a type and in an amount customary in light of the type of Collateral.  Each Claimant holding a Secured Claim shall be named as an additional loss payee as its interests appear.

**Post-Confirmation Date Maintenance of Collateral**.

The Reorganized Debtor (or New Paul should Class 22 reject the Plan) shall maintain the Collateral securing each Secured Claim in the condition it is in as of the Effective Date, normal wear and tear excepted.

**Certain Post-Confirmation Date Taxes**.

The Reorganized Debtor (or New Paul should Class 22 reject the Plan) shall timely pay all post Confirmation Date taxes, if any, that would, absent such payment, become a lien against Collateral.

**Prepayment.**

The Reorganized Debtor (or New Paul should Class 22 reject the Plan) may prepay any Class at any time without penalty or premium.

**Misclassified or Unclassified Claims**.

Notwithstanding the classification of Claims and interests set forth above and the specific treatment provisions set forth below, any Claimant judicially determined to hold a Secured Claim that is not expressly classified as such shall be considered as a separate class for voting and distribution purposes. Such a Claimant shall, to the extent of its Secured Claim, receive treatment identical to that provided for Class 3.

**Disputed Claims**.

A number of objections to Claims, motions to estimate contingent Claims, and motions for valuation of Collateral may be filed. A Claim as to which an objection, motion for estimation, or motion for valuation is pending is referred to in this Plan as a Disputed Claim. See the definition of Disputed Claim, *supra*, for additional Claims falling within that definition.

No distribution shall be made under the Plan on a Disputed Claim, unless and until it becomes a Claim allowed by a final order that is no longer subject to appeal. Until that time, as to Claims that fall within the definition of Disputed Claims because they are the subject of an objection, motion for estimation, or motion for valuation, the Disbursing Agent shall hold, at interest, the payments to which the holder of such a Disputed Claim would have been entitled under the Plan if the Disputed Claim were an allowed Claim in the lesser of: (a) the maximum amount asserted in the Case by the Claimant; or (b) should the Disbursing Agent move for a Court order estimating the Disputed Claim, the estimated amount thereof as determined by the

Court, which shall constitute the maximum recovery that the holder thereof may recover under

the Plan.   Disbursement of the payments so held and the accrued interest thereon shall be made

as quickly as is practicable after the Disputed Claim becomes a Claim allowed by a final order

that is no longer subject to appeal.

### Default.

Given the nature of the Debtor in Possession's business, income fluctuates seasonally.  As

a result, although fixed monthly payments may be proposed under the Plan, circumstances may

occur that may render the Reorganized Debtor (or New Paul should Class 22 reject the Plan)

unable to make the payments set forth under the "Specific Treatment Provisions" of the Plan.

If the Reorganized Debtor (or New Paul should Class 22 reject the Plan) is unable to

make the fixed monthly payments proposed under the "Specific Treatment Provisions" of the

Plan, its failure to do so shall not constitute a default under the Plan so long as:

> the Reorganized Debtor (or New Paul should Class 22 reject the
> Plan) is not in default under any other provision of the Plan; and
>
> the Reorganized Debtor (or New Paul should Class 22 reject the
> Plan) is using its best efforts to make such payments and, in fact, is
> paying as much thereof as its income will permit after payment of
> expenses permissible under the Plan; and
>
> the payments actually received by the Claimant aggregate at least
> as much every six months from and after the Effective Date as the
> fixed payments would have aggregated during that period had they
> been made timely; and
>
> the Reorganized Debtor (or New Paul should Class 22 reject the
> Plan) pays the Claimant interest at a rate per annum equal to the
> floating rate of interest announced from time to time by the Wall
> Street Journal as the prime rate in the United States, plus two
> percent (2%), on each fixed payment not made by the date
> specified above in the "Payments" subsection of the "General

Treatment Provisions" of the Plan or, if applicable, by the date specified under the "Specific Treatment Provisions" of the Plan (in either case, the "Due Date"), in addition to any interest proposed under the "Specific Treatment Provisions" of the Plan. Such additional interest shall begin to accrue on the Due Date and continue to accrue until the monthly payment, and additional interest accrued thereon, have been paid to the Claimant. Any change in the interest rate resulting from a change in the prime rate shall become effective as of the opening of business on the day on which such change in the prime rate is announced by the Wall Street Journal.

Should a default occur under the Plan, Claimants may immediately pursue their rights and remedies under state law; provided, however, if the default results from the failure to: (a) make a payment to a Claimant; (b) maintain in force at all times insurance of a type and in an amount customary in light of the type of Collateral; (c) name a Claimant holding a Secured Claim as an additional loss payee as its interests appear; (d) maintain Collateral in the condition it was in as of the Effective Date, normal wear and tear excepted; or (e) timely pay all post-Confirmation Date taxes, if any, that would, absent such payment, become a lien against Collateral, only the Claimant or Claimants directly affected by the default may immediately pursue their rights and remedies under state law.

## Specific Treatment Provisions

**Class 1 (Code § 507(a)(4) Claims)**: If this Class accepts the Plan, the Claim in this Class shall bear interest at the rate of three and one quarter percent (3.25%) per annum. Payments on each Claim in this Class shall be in an amount sufficient to pay it and accrued interest in equal payments over a time period not to exceed one (1) year after the Effective Date.

If this Class rejects the Plan, the holder of the Claim in this Class will receive cash on the Effective Date equal to the Claimant's Claim in this Class.

Should Class 22 reject the Plan, this Class shall be deemed to have rejected the Plan regardless of any ballot cast in this Class.

The foregoing shall constitute full satisfaction of the Claim in this Class.

**Class 2 (Code § 507(a)(5) Claim)**: If this Class accepts the Plan, the Claim in this Class shall bear interest at the rate of three and one quarter percent (3.25%) per annum. Payments on the Claim in this Class shall be in an amount sufficient to pay it and accrued interest in equal payments over a time period not to exceed one (1) year after the Effective Date.

If this Class rejects the Plan, the holder of the Claim in this Class will receive cash on the Effective Date equal to the Claim in this Class.

Should Class 22 reject the Plan, this Class shall be deemed to have rejected the Plan regardless of any ballot cast in this Class.

The foregoing shall constitute full satisfaction of the Claim in this Class.

**Class 3 (allowed Secured Claim held by AFCO)**: The Claim in this Class shall bear interest at the rate of five and one quarter percent (5.25%) per annum. Payments on the Claim in this Class shall be in an amount sufficient to pay it and accrued interest in equal payments over a time period not to exceed six (6) years after the Effective Date.

The foregoing shall constitute full satisfaction of the Claim in this Class.

**Class 4 (allowed Secured Claim held by Brown & Brown of Central OK)**: The Claimant holding the Claim in this Class shall be paid $52,312 on the Effective Date in full satisfaction of any and all allowed Pre-Petition Claims it may hold. The request for entry of the

Confirmation Order shall constitute a motion under Bankruptcy Rule 9019 to compromise all controversies with the Claimant with respect to Pre-Petition Claims.

The foregoing shall constitute full satisfaction of the Claim in this Class.

**Class 5 (allowed Secured Claim of Citizens Bank of Oklahoma)**: The Claim in this Class shall bear interest at the rate of five and one quarter percent (5.25%) per annum. Payments on the Claim in this Class shall be in an amount sufficient to pay it and accrued interest in equal payments over a time period not to exceed six (6) years after the Effective Date. Payments on the Claim in this Class shall be made on the 8th day of each month, commencing the first full-calendar month after the Effective Date.

The foregoing shall constitute full satisfaction of the Claim in this Class.

**Class 6 (allowed Secured Claim of Commercial Credit Group, Inc.)**: The Claim in this Class shall bear interest at the rate of five and one quarter percent (5.25%) per annum. Payments on the Claim in this Class shall be in an amount sufficient to pay it and accrued interest in equal payments over a time period not to exceed six (6) years after the Effective Date. Payments on the Claim in this Class shall be made on the 15th day of the month, commencing the first full-calendar month after the Effective Date.

The foregoing shall constitute full satisfaction of the Claim in this Class.

**Class 7 (allowed Secured Claim of GMAC)**: The Claim in this Class shall bear interest at the rate of five and one quarter percent (5.25%) per annum. Payments on the Claim in this Class shall be in an amount sufficient to pay it and accrued interest in equal payments over a time period not to exceed four (4) years after the Effective Date. Payments on the Claim in this Class

shall be made on the 8th day of the month, commencing the first full-calendar month after the Effective Date.

The foregoing shall constitute full satisfaction of the Claim in this Class.

**Class 8 (allowed Secured Claim of GMAC)**:  The Claim in this Class shall bear interest at the rate of five and one quarter percent (5.25%) per annum.  Payments on the Claim in this Class shall be in an amount sufficient to pay it and accrued interest in equal payments over a time period not to exceed four (4) years after the Effective Date.  Payments on the Claim in this Class shall be made on the 8th day of the month, commencing the first full-calendar month after the Effective Date.

The foregoing shall constitute full satisfaction of the Claim in this Class.

**Class 9 (allowed Secured Claim of Indiana Department of Revenue):**  The Claim in this Class shall bear interest at the rate of five and one quarter percent (5.25%) per annum. Payments on the Claim in this Class shall be in an amount sufficient to pay it and accrued interest in equal payments over a time period not to exceed six (6) years after the Effective Date.

The foregoing shall constitute full satisfaction of the Claim in this Class.

**Class 10 (allowed Secured Claim of National American Insurance Co.)**:  The Claim in this Class shall bear interest at the rate of five and one quarter percent (5.25%) per annum. Payments on the Claim in this Class shall be in an amount sufficient to pay it and accrued interest in equal payments over a time period not to exceed six (6) years after the Effective Date.

The foregoing shall constitute full satisfaction of the Claim in this Class.

**Class 11 (allowed Secured Claim of Paccar Financial Corp.)**:  The Claim in this Class shall bear interest at the rate of five and one quarter percent (5.25%) per annum.  Payments on the Claim in this Class shall be in an amount sufficient to pay it and accrued interest in equal payments over a time period not to exceed three (3) years after the Effective Date.  Payments on the Claim in this Class shall be made on the 8th day of the month, commencing the first full-calendar month after the Effective Date.

The foregoing shall constitute full satisfaction of the Claim in this Class.

**Class 12 (allowed Secured Claim of Paccar Financial Corp.)**:  The Claim in this Class shall bear interest at the rate of five and one quarter percent (5.25%) per annum.  Payments on the Claim in this Class shall be in an amount sufficient to pay it and accrued interest in equal payments over a time period not to exceed three (3) years after the Effective Date.  Payments on the Claim in this Class shall be made on the 8th day of the month, commencing the first full-calendar month after the Effective Date.

The foregoing shall constitute full satisfaction of the Claim in this Class.

**Class 13 (allowed Secured Claim of Paccar Financial Corp.)**:  The Claim in this Class shall bear interest at the rate of five and one quarter percent (5.25%) per annum.  Payments on the Claim in this Class shall be in an amount sufficient to pay it and accrued interest in equal payments over a time period not to exceed three (3) after the Effective Date.  Payments on the Claim in this Class shall be made on the 8th day of the month, commencing the first full-calendar month after the Effective Date.

The foregoing shall constitute full satisfaction of the Claim in this Class.

**Class 14 (allowed Secured Claim of Paccar Financial Corp.)**: The Claim in this Class shall bear interest at the rate of five and one quarter percent (5.25%) per annum. Payments on the Claim in this Class shall be in an amount sufficient to pay it and accrued interest in equal payments over a time period not to exceed three (3) years after the Effective Date. Payments on the Claim in this Class shall be made on the 8th day of the month, commencing the first full-calendar month after the Effective Date.

The foregoing shall constitute full satisfaction of the Claim in this Class.

**Class 15 (allowed Secured Claim of Trans Advantage, Inc.):** The Claim in this Class shall be paid by continuing to make the monthly payments with respect to Addendum 60006611 that are specified on Exhibit A. Payments on the Claim in this Class shall be made on the 29th day of the month.

The foregoing shall constitute full satisfaction of the Claim in this Class.

**Class 16 (allowed Secured Claim of Trans Advantage, Inc.):** The Claim in this Class shall be paid by continuing to make the monthly payment with respect to Addendum 60006479 that are specified on Exhibit A. Payments on the Claim in this Class shall be made on the 22nd day of the month.

The foregoing shall constitute full satisfaction of the Claim in this Class.

**Class 17 (allowed Secured Claim of Transport International Pool, Inc.):** The Claim in this Class shall bear interest at the rate of five and one quarter percent (5.25%) per annum. Payments on the Claim in this Class shall be in an amount sufficient to pay it and accrued interest in equal payments over a time period not to exceed four and a half (4.5) years after the Effective

Date. Payments on the Claim in this Class shall be made on the 1st day of the month, commencing the first full-calendar month after the Effective Date.

The foregoing shall constitute full satisfaction of the Claim in this Class.

**Class 18 (allowed Secured Claim of Transport International Pool, Inc.)**: The Claim in this Class shall bear interest at the rate of five and one quarter percent (5.25%) per annum. Payments on the Claim in this Class shall be in an amount sufficient to pay it and accrued interest in equal payments over a time period not to exceed four and a half (4.5) years after the Effective Date. Payments on the Claim in this Class shall be made on the 15th day of the month, commencing the first full-calendar month after the Effective Date.

The foregoing shall constitute full satisfaction of the Claim in this Class.

**Class 19 (allowed Secured Claim of Transport International Pool, Inc.):** The Claim in this Class shall bear interest at the rate of five and one quarter percent (5.25%) per annum. Payments on the Claim in this Class shall be in an amount sufficient to pay it and accrued interest in equal payments over a time period not to exceed four and a half (4.5) years after the Effective Date. Payments on the Claim in this Class shall be made on the 1st day of the month, commencing the first full-calendar month after the Effective Date.

The foregoing shall constitute full satisfaction of the Claim in this Class.

**Class 20 (allowed Secured Claim of RTS Financial Service, Inc.):** The legal, equitable, and contractual rights to which the Claim in this Class entitles the holder shall be unaltered by the Plan.

**Class 21 (allowed Unsecured Claims of $10,000 and under and allowed Unsecured Claims Voluntarily reduced to $10,000)**: Should Class 22 accept the Plan, each holder of a Claim in this Class shall be paid thirty-five percent (35%) of its Claim on the Effective Date of the Plan or as quickly thereafter as is practicable.

Should Class 22 reject the Plan, all holders of Class 21 Claims shall be deemed to be holders of Class 22 Claims and shall be provided the treatment proposed to Claimants holding Claims in a rejecting Class 22, and any ballots cast in Class 21 shall be tabulated as rejections in Class 22.

The foregoing shall constitute full satisfaction of the Claims in this Class.

**Class 22 (allowed Unsecured Claims of more than $10,000 and allowed Unsecured Claims of $10,000 and less that elect to be treated in this Class)**:

Should Class 22 accept the Plan, each holder of a Claim in this Class shall receive forty percent (40%) of its Claim, without interest, payable in equal payments over a period of time not to exceed ten (10) years after the Effective Date. Payments on the Claims in this Class shall commence on May 19, 2011, and continue on the 19th day of each month thereafter until all required payments have been made.

The foregoing shall constitute full satisfaction of the Claims in this Class.

Should Class 22 reject the Plan, each holder of a Class 22 Claim, which shall then also include each holder of a Class 21 Claim, shall receive a pro rata distribution of one hundred percent (100%) of the equity securities of the Reorganized Debtor, and a prompt, pro rata distribution of any net proceeds from the liquidation of property vesting in the Reorganized

Debtor after full payment of any then-unpaid Claims, including accrued interest thereon, that are entitled to priority over Class 22 Claims under Code § 507.

**Class 23 (Equity Security Interest):** If Class 22 accepts the Plan, the Pre-Petition equity security interest of the Interest Holder shall be retained. If Class 22 rejects the Plan, the Pre-Petition equity security interest of the Interest Holder shall be cancelled, and the Interest Holder shall not receive or retain any property on account of his Pre-Petition equity security interest.

## MEANS FOR PERFORMING THE PLAN AND MANAGEMENT OF THE REORGANIZED DEBTOR SHOULD CLASS 22 ACCEPT THE PLAN

This section shall govern if Class 22 accepts the Plan. Should Class 22 reject the Plan, the provisions of this section shall not apply, and the provisions of the section following this section shall govern. All Property of the Estate, including all avoidance and other bankruptcy and non-bankruptcy causes of action, claims and interests, is hereby expressly preserved and shall vest in the Reorganized Debtor on the Effective Date free and clear of all Claims, Disputed Claims, liens, encumbrances, and interests, except as otherwise provided in the Plan. By confirmation of the Plan, the Reorganized Debtor shall be deemed to have been appointed as the representative of the Estate for purposes of enforcing the causes of action, claims, and interests vesting in the Reorganized Debtor, as well as pursuing objections to Claims, motions to estimate contingent Claims, and motions for valuation of Collateral.

The Reorganized Debtor shall continue in the same businesses as the Debtor in Possession, unless circumstances warrant a change in business.

Revenue from the Reorganized Debtor's post-Confirmation Date business operation shall be used to:

> fund payment of future business expenses and other costs of operation; and
>
> fund payments required under the Plan.

Any income not required to make current payments required under the Plan may be used as the Reorganized Debtor, in its judgment, deems appropriate. However, for the first twenty-four (24) months after the Effective Date: (a) the Reorganized Debtor shall not: (i) increase the salary or other compensation of Troy Paul more than three percent (3%) per year of the salary and other compensation he was receiving as of the Effective Date; or (ii) pay any bonuses to Troy Paul; (b) the Reorganized Debtor shall not make or permit any loans, advances and other extensions of credit, directly or indirectly, to or for the benefit of Troy Paul; and (c) the Reorganized Debtor shall not pay or declare, or become obligated to pay or declare, any dividends or make any other distributions to Troy Paul as a shareholder, or purchase or redeem any shares of the Reorganized Debtor from him, or otherwise make any other payments or distributions to Troy Paul, other than payments permitted under subparagraph (a) above. The foregoing shall not preclude the Reorganized Debtor from reimbursing Troy Paul for, or indemnifying Troy Paul against, any amounts appropriately reimbursed for, or indemnified against, under applicable state law. Should Class 22 accept the Plan, any change of control in the Reorganized Debtor shall constitute a default under the Plan.

The Reorganized Debtor may sell or otherwise dispose of any assets it deems unnecessary to the Reorganized Debtor's continued operations. The proceeds from such a sale or disposition

may be used in the Reorganized Debtor's operations or to fund payments required under the Plan.

However, the proceeds from the sale or disposition of any property subject to a lien preserved

under the Plan shall, to the extent of the unpaid Secured Claim and accrued interest, be promptly

remitted to the holder of the Secured Claim.

Troy Paul will serve as President of the Reorganized Debtor and Chairman of its Board of

Directors. Ryan Dobbs will serve as Secretary/Treasurer of the Reorganized Debtor and a

member of its Board.

The proposed compensation for the individuals named above is as disclosed in the

disclosure statement. Likewise, the affiliations of the individuals named above are disclosed in

the disclosure statement.

As required by the Code, the Debtor's Articles of Incorporation shall be amended to

include a provision prohibiting the issuance of nonvoting equity securities.

## MEANS FOR PERFORMING THE PLAN AND MANAGEMENT OF THE REORGANIZED DEBTOR AND NEW PAUL SHOULD CLASS 22 REJECT THE PLAN

This section shall govern if Class 22 rejects the Plan. Should Class 22 accept the Plan,

the provisions of this section shall not apply, and the provisions of the section preceding this

section shall govern. All Property of the Estate, including all avoidance and other bankruptcy

and non-bankruptcy causes of action, claims and interests, is hereby expressly preserved. All

unencumbered Property of the Estate, except property subject to unexpired leases being assumed

under the Plan and assigned to New Paul, shall vest in the Reorganized Debtor on the Effective

Date free and clear of all Claims, Disputed Claims, liens, encumbrances, and interests, except as

otherwise provided in the Plan. By confirmation of the Plan, the Reorganized Debtor shall be

deemed to have been appointed as the representative of the Estate for purposes of enforcing the causes of action, claims, and interests vesting in the Reorganized Debtor, as well as pursuing objections to Unsecured Claims, motions to estimate contingent Unsecured Claims, and motions for valuation of Collateral.

All aspects of the Reorganized Debtor's management shall be in accordance with applicable state law. To that end, a meeting of the shareholders of the Reorganized Debtor shall be held on the fourth Monday after the Effective Date for the purpose of electing directors.

After reserving sufficient funds to pay any post-Effective Date obligations imposed on the Reorganized Debtor by state or federal law and to pay essential costs and expenses of carrying out its obligations under the Plan, the Reorganized Debtor shall immediately remit all other unencumbered cash, accounts receivable, the proceeds from the successful prosecution of any causes of action vesting in the Reorganized Debtor, net of the attorneys' fees and costs of prosecuting those causes of action, and the proceeds from the liquidation of any other unencumbered property vesting in the Reorganized Debtor, net of the fees and expenses of the liquidation, to the holders of any then-unpaid Priority Claims. The Reorganized Debtor shall make such remittances in the hierarchy established by Code § 507, satisfying each higher Priority Claim in full, including interest, before remitting to a lower Priority Claim. New Paul shall cooperate with the Reorganized Debtor in verifying the then-unpaid amount of Priority Claims. When all Priority Claims have been paid in full, including accrued interest, the Reorganized Debtor shall remit pro-rata to the holders of Unsecured Claims, until all assets vesting in the Reorganized Debtor have been exhausted.

All other Property of the Estate, including, but not limited to, all Collateral and all property subject to unexpired leases being assumed and assigned to New Paul under the Plan, shall vest in New Paul on the Effective Date free and clear of all Claims, Disputed Claims, liens, encumbrances, and interests, except as otherwise provided in the Plan. By confirmation of the New Plan, New Paul shall be deemed to have been appointed as the representative of the Estate for purposes of enforcing the causes of action, claims, and interests vesting in New Paul, as well as pursuing objections to Secured Claims and motions for valuation of Collateral.

New Paul shall continue in the same businesses as the Debtor in Possession, unless circumstances warrant a change in business.

Revenue from New Paul's business operations shall be used to:

> fund payment of future business expenses and other costs of operation; and

> fund payments required under the Plan.

Any income not required to make current payments required under the Plan may be used as New Paul, in its judgment, deems appropriate. However, for the first twenty-four (24) months after the Effective Date: (a) New Paul shall not: (i) increase the salary or other compensation of Troy Paul more than three percent (3%) per year of the salary and other compensation he was receiving from the Debtor in Possession as of the Effective Date; or (ii) pay any bonuses to Troy Paul; (b) New Paul shall not make or permit any loans, advances and other extensions of credit, directly or indirectly, to or for the benefit of Troy Paul; and (c) New Paul shall not pay or declare, or become obligated to pay or declare, any dividends or make any other distributions to Troy Paul as an equity security owner in New Paul, or purchase or redeem any of his equity security

interests, or otherwise make any other payments or distributions to Troy Paul, other than payments permitted under subparagraph (a) above.   The foregoing shall not preclude New Paul from reimbursing Troy Paul for, or indemnifying Troy Paul against, any amounts appropriately reimbursed for, or indemnified against, under applicable state law.  Any change of control in New Paul shall constitute a default under the Plan.

New Paul may sell or otherwise dispose of any assets it deems unnecessary to its continued operations. The proceeds from such a sale or disposition may be used in New Paul's operations or to fund payments required from it under the Plan.  However, the proceeds from the sale or disposition of any property subject to a lien preserved under the Plan shall, to the extent of the unpaid Secured Claim and accrued interest, be promptly remitted to the holder of the Secured Claim.

Troy Paul will serve as Managing Member of New Paul.  Ryan Dobbs will also serve in management of New Paul.

The proposed compensation for the individuals named above is as disclosed in the disclosure statement.  Likewise, the affiliations of the individuals named above are disclosed in the disclosure statement.

Should Class 22 reject the Plan but the Court confirms it, New Paul will be an entity acquiring property under the Plan and will be bound by the Plan as provided under Code § 1141(a).  Under those circumstances, New Paul shall file an acknowledgment in the Case before the Effective Date in which it acknowledges it is bound by the Plan.

New Paul shall be deemed to have assumed, and shall pay Priority Claims and Secured Claims in accordance with the General Treatment Provisions and Specific Treatment Provisions

of the Plan; provided, however, New Paul shall not assume and shall have no obligation to pay

any Secured Claim satisfied by a transfer of Collateral to a Secured Creditor as provided under

the Cram Down Section of the Plan. New Paul's assumption and obligation to pay Priority

Claims shall not relieve the Reorganized Debtor from its obligation to pay Priority Claims as

provided above. New Paul shall also be obligated to perform under assumed and assigned

executory contracts and unexpired leases as provided in the Plan, and the other parties to such

contracts and leases shall not have recourse against the Reorganized Debtor or its property.

As required by the Code, the Debtor's Articles of Incorporation shall be amended to

include a provision prohibiting the issuance of nonvoting equity securities. The Debtor's

Articles shall also be amended to authorize the issuance of sufficient equity securities in the

Reorganized Debtor to satisfy the treatment proposed for Class 22.

## CONTEMPLATED COMPENSATION FOR
## SERVICES, COSTS, AND EXPENSES

No compensation has been paid or promised by the Proponent, by the Debtor, by the

Debtor in Possession, or by a person issuing securities or acquiring property under the Plan, for

services or for costs and expenses in, or in connection with, the Case, or in connection with the

Plan and incident to the Case, except the following:

> Paul Transportation, Inc., has promised to pay Kline, Kline, Elliott &
> Bryant, P.C., attorneys for the Debtor in Possession, fees at its customary
> hourly rates and to reimburse Kline, Kline, Elliott & Bryant, P.C., for its
> expenses, subject to Court approval after proper application, notice, and
> hearing;

> Paul Transportation, Inc., has promised to pay BKD, L.L.P., CPAs and
> advisors for the Debtor in Possession, fees at its customary hourly rates
> and to reimburse BKD, L.L.P., for its expenses, subject to Court approval
> after proper application, notice and hearing; and

> the Estate will also be responsible for payment of attorneys, accountants, and other professionals for services rendered to, and expenses incurred on behalf of, the Creditors' Committee in such amounts as may be allowed by the Court upon proper application, notice, and hearing. No Creditors' Committee shall serve after the Effective Date of the Plan, except as otherwise provided herein.

The Reorganized Debtor shall be responsible for the timely payment of disbursement fees incurred pursuant to 28 U.S.C. § 1930(a)(6). After the Confirmation Date, the Reorganized Debtor shall file with the Court and serve on the United States Trustee a monthly financial report for each month or portion thereof while the Case remains open. The monthly financial reports shall be in a format prescribed by the United States Trustee.

Any payment made by the Proponent, the Debtor, the Debtor in Possession, or by a person issuing securities or acquiring property under the Plan, for services or for costs and expenses in, or in connection with, the Case, or in connection with the Plan and incident to the Case, has been approved by, or shall be subject to the approval of, the Court as reasonable. Costs and expenses incurred after the Confirmation Date shall not be considered as costs and expenses in, or in connection with, the Case, or in connection with the Plan and incident to the Case, and therefore shall not be subject to Court approval.

A Professional Fee Claim by one of the Debtor's Professionals or one of the Creditors' Committee Professionals will be allowed only if:

(a)     On or before 30 days after the Effective Date, the entity holding such Professional Fee Claim both files with the Court and appropriately serves a final fee application or a motion requesting allowance of the fees; and

(b)    The Court allows the Claim by a final order that is no longer subject to appeal.

The Reorganized Debtor or any other party in interest may file an objection to such an application or motion within 20 days of its filing.

**Any party holding a Professional Fee Claim that does not timely file and serve a fee application or motion for payment thereof will be forever barred from asserting such Claim against the Debtor, the Estate, the Reorganized Debtor, New Paul, and their respective properties.**

The Reorganized Debtor will pay or cause to be paid an allowed Professional Fee Claim, in cash, within thirty (30) days after the date on which the Court allows it by a final order that is no longer subject to appeal.

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

All executory contracts and unexpired leases listed on Exhibit A hereto are assumed pursuant to Code § 1123(b)(2) as of the Effective Date. All other executory contracts and unexpired leases not previously rejected are rejected as of the Effective Date. Should Class 22 reject the Plan, the assumed executory contracts and unexpired leases shall be deemed to have been assigned to New Paul as of the Effective Date and the Reorganized Debtor shall be relieved from any Post-Effective Date obligations with respect thereto.

The Debtor in Possession reserves the right to amend Exhibit A at any time before the conclusion of the confirmation hearing to: (a) delete any executory contract or unexpired lease and provide for its rejection under the Plan or otherwise; or (b) add any executory contract or unexpired lease and provide for its assumption, or assumption and assignment. The Debtor in

Possession will provide notice of any amendment to Exhibit A to the party or parties to the agreement affected thereby. The Plan confirmation order will constitute a Court order approving the assumption, on the Effective Date, of the executory contracts and unexpired leases then identified on Exhibit A.

Exhibit A also identifies any amounts that the Debtor in Possession believes Code §§ 365(b)(1)(A) or (B) require be paid in order to cure defaults under the executory contracts and unexpired leases to be assumed under the Plan. The Debtor in Possession reserves the right to amend Exhibit A, including modifying the proposed Cure Payment, up to the conclusion of the confirmation hearing.

As required by Code § 365(b)(1), any and all monetary defaults under each executory contract and unexpired lease to be assumed under this Plan will be satisfied in one of the following two ways: (a) the Reorganized Debtor will pay to the non-debtor party to the executory contract or unexpired lease the Cure Payment set forth on Exhibit A, in cash on or about the Effective Date (or at such later time as may be specified on Exhibit A); or (b) Reorganized Debtor (or New Paul, as the case may be) will satisfy any other terms that are agreed to by both the Debtor in Possession and the non-debtor party to an executory contract or unexpired lease that will be assumed. If, however, a dispute arises regarding: (a) the amount of any proposed Cure Payment; (b) whether there is adequate assurance of future performance under an executory contract or unexpired lease to be assumed, to the extent required under the Code; or (c) any other matter pertaining to a proposed assumption, the proposed Cure Payment will be made within 15 days after entry of a final order resolving the dispute and approving the assumption.

Any person or entity that is a party to an executory contract or unexpired lease that will be assumed under the Plan, and that either contends that the proposed Cure Payment specified on Exhibit A is incorrect or otherwise objects to the contemplated assumption, which may include proposed modifications to the existing contracts or leases as stated on Exhibit A, must file with the Court and serve upon the Debtor in Possession, the Debtor in Possession's counsel, and the Creditors' Committee's counsel a written statement and supporting declaration stating the basis for its objection. This statement and declaration must be filed and served by the later of: (a) ten (10) days before the confirmation hearing; or (b) with respect to an executory contract or unexpired lease added to the Exhibit A by an amendment, or with respect to any proposed Cure Payment that is reduced by such an amendment, five (5) days after the Debtor in Possession files and serves such an amendment. Any entity that fails to file timely and serve such a statement and declaration will be deemed to waive any and all objections to the proposed assumption and the proposed Cure Payment.

Payment of the Cure Payment with respect to executory contracts or unexpired leases that will be assumed under the Plan shall be deemed to satisfy, in full, any and all Claims arising therefrom, including any prepetition claim or rejection damage claim asserted in a filed proof of claim or listed in the Schedules, irrespective of whether the Cure Payment is less than the amount set forth in such proof of claim or the Schedules. Upon the tendering of the Cure Payment, such Claims shall be disallowed, without further order of the Court or action by any party.

Notwithstanding a transaction appearing on Exhibit A, the Debtor in Possession, the Reorganized Debtor, and New Paul all reserve the right to seek a determination whether a transaction is a "true lease" or a secured financing transaction. If such a transaction is

determined to be a secured financing transaction, the Claimant shall receive the same treatment as proposed for Class 3. Should the challenged transaction be determined to be a "true lease," and an agreement modifying the lease not be reached, the lease shall be deemed rejected upon entry of the order in which that determination is made.

Any Claim arising from the rejection of an executory contract or unexpired lease under the Plan must be evidenced by a proof of claim filed with the Court and served upon the Reorganized Debtor not more than thirty (30) days after the later of the Effective Date or, should the rejection be a deemed rejection resulting from a challenged transaction being determined to be a "true lease," not more than thirty (30) days after entry of the order in which that determination was made. Failure to file timely and serve such a proof of claim shall result in the Claim arising from the rejection of an executory contract or unexpired lease under the Plan not being enforceable against the Reorganized Debtor or its property. Proofs of claim with respect to all other rejected executory contracts and unexpired leases shall be governed by the Order establishing the Bar Date.

## RETENTION OF JURISDICTION

The Court shall retain jurisdiction for the purposes set forth in Code §§ 1127(b) and 1142. The Court shall also retain jurisdiction to:

> hear and determine any matter or proceeding concerning Claims or interests, including, but not limited to, matters or proceedings to allow or disallow Claims or interests;

> determine and enter orders concerning payment of administrative expenses and other Priority Claims;

> enforce and interpret the Plan and the order confirming it, regardless when any controversy about the Plan or order confirming it might arise; should a

controversy about the enforcement or interpretation of the Plan or the order confirming it arise after the Case is closed, any Party in Interest may seek to have the Case reopened to obtain enforcement or an interpretation of the Plan or the order confirming it;

correct any defect, cure any omission, or reconcile any inconsistencies in the Plan or order confirming it as might be necessary or helpful to effect the purpose and intent of the Plan and the order confirming it;

enter any orders, including injunctions, necessary to enforce the Plan and the order confirming it and to impose such limitations, restrictions, terms, and conditions on Parties in Interest as the Court may deem necessary; and

hear and determine all questions or disputes about title to the Reorganized Debtor's assets and all causes of action, claims, disputes, or conflicts, regardless whether pending on the Confirmation Date, including, but not limited to, the bankruptcy and non-bankruptcy causes of action, claims, and interests vesting in the Reorganized Debtor.

## MODIFICATION OF THE PLAN

The Plan may be modified pre- and post-confirmation as provided in Code § 1127.

## DISCHARGE

Except as otherwise provided in Code § 1141(d), in the Plan, or in the order confirming

the Plan, confirmation of the Plan shall discharge the Debtor from all Debt as provided in Code

§ 1141(d).

## MISCELLANEOUS

**Headings**.  The headings in the Plan are for convenience of reference only and shall not

limit or otherwise affect the meaning of the text.

**Notices**.  All notices required or permitted to be made under the Plan shall be in writing

and shall be delivered either personally, by facsimile, or by first class mail:

If to Paul Transportation, Inc.,
c/o Stephen W. Elliott
Kline, Kline, Elliott & Bryant, P.C.
720 NE 63rd Street
Oklahoma City, Oklahoma 73105
Telephone: (405) 848-4448
Telefacsimile: (405) 842-4539

If to a Claimant or Interest Holder, at the address used in its proof of claim
or proof of interest or, if it did not file one, at the address listed in the
Schedules. If the Claimant or Interest Holder filed an entry of appearance
and request for notices, notices shall be delivered to the address used in the
entry of appearance and request for notices instead of the address listed in
the Schedules;

If to New Paul, at the address provided in the acknowledgment New Paul must
file that it is bound by the Plan.

Except as may be otherwise provided in the Plan, notice shall be deemed given when

hand delivered, transmitted, or placed in the United States Mail, postage prepaid.

**Setoff, Recoupment and Other Rights**. Notwithstanding anything to the contrary

contained in the Plan, the Reorganized Debtor may, but shall not be required to, setoff, recoup,

assert counterclaims or withhold against the distributions to be made pursuant to this Plan on

account of any allowed Claim, any claims that the Debtor, the Estate, or Reorganized Debtor may

have against the entity holding the allowed Claim; provided, however, that none of the failure to

effect such a setoff or recoupment, the failure to assert counterclaims or withhold distributions,

or the allowance of any Claim against the Debtor, the Estate or Reorganized Debtor, or any

partial or full payment during the Case or after the Effective Date in respect of any allowed

Claim, shall constitute a waiver or release by the Debtor, the Estate or Reorganized Debtor of any

claim that any of them may possess against such holder.

**Disbanding the Creditors' Committee**. On the Effective Date, or on the fourth Monday after the Effective Date should Class 22 reject the Plan, the Creditors' Committee shall be released and discharged from the rights and duties arising from or related to the Case, except with respect to final applications for professional compensation. Professionals retained by the Creditors' Committee and the members thereof shall not be entitled to compensation or reimbursement of expenses for any services rendered or expenses incurred after the Effective Date, except for services rendered and expenses incurred approved by the Court in connection with any applications by such professionals or Creditors' Committee members for allowance of compensation and reimbursement of expenses pending on the Effective Date or timely filed after the Effective Date as provided in the Plan.

**Special Tax Provisions**. In accordance with Code § 1146(a), neither the issuance, transfer or exchange of a security, nor the delivery of an instrument or transfer under the Plan, shall be taxed under any law imposing a stamp or similar tax.

**Cram Down**. If one or more impaired Classes votes to reject the Plan, the Debtor in Possession intends to request that the Court confirm the Plan in accordance with Code § 1129(b). Should the Court determine that the Plan as proposed is not subject to confirmation by cram down under Code § 1129(b), the Debtor in Possession reserves the right to modify the Plan. Should either the Debtor in Possession elect not to modify the Plan or the Court determine that the Plan as modified is not subject to confirmation by cram down under Code § 1129(b) and the rejecting Class consists of a Secured Claim, the Plan shall be deemed to have been modified to provide that, on the Effective Date, or as quickly thereafter as is practicable, the Reorganized

Debtor shall transfer to the holder of the Secured Claim in the rejecting Class all of the Reorganized Debtor's right, title, and interest in and to the Collateral securing the Claim in that Class. Such a transfer shall be in full satisfaction of the Secured Claim in the rejecting Class.

**No Admission Against Interest**. Until the Effective Date, neither the filing of this Plan, any statement made or provision contained in it, nor any action taken by any Claimant or Interest Holder with respect to this Plan shall be or shall be construed to be: an admission against interest; a waiver of any rights that any Claimant or Interest Holder may have against the Debtor or any of its properties; or a waiver of any rights that any Claimant or Interest Holder may have against any other Claimant or Interest Holder. Until the Effective Date, all such rights are specifically reserved. Likewise, the Debtor in Possession's categorization and proposed treatment of Claims and interests shall not constitute an admission concerning the validity, extent, enforceability, or priority of any Claim or interest. In the event that the Plan is not confirmed, neither the Plan nor any statement made in it may be used or relied upon in any manner or for any purpose in any suit, action, proceeding, or controversy in or outside of the Case.

**Number and Gender**. Unless the context requires otherwise, the neuter shall include the male and female, the singular shall include the plural, the conjunctive shall include the disjunctive, and vice versa.

Dated:  December 15, 2010.

PAUL TRANSPORTATION, INC.

By: _____
Troy Paul, President


s/ Stephen W. Elliott
Stephen W. Elliott, OBA #2685
Matthew C. Goodin, OBA #19327
Kline, Kline, Elliott & Bryant, P.C.
720 N. E. 63rd Street
Oklahoma City, Oklahoma  73105
Telephone:  (405) 848-4448
Telefacsimile:  (405) 842-4539
selliott@klinefirm.org

ATTORNEYS FOR PAUL TRANSPORTATION, INC.,
DEBTOR IN POSSESSION

## EXHIBIT A

## ASSUMED EXECUTORY CONTRACTS AND UNEXPIRED LEASES

| Name and Address of Party to Lease or Contract | Description of Contract or Lease | Monthly Payments | Payment Due Date | Cure Payment, including Compensation for Actual Pecuniary Loss Resulting from any Default |
|---|---|---|---|---|
| Blue Cross and Blue Shield | Health Insurance | n/a | | |
| Copiers Plus of Oklahoma<br>PO Box 5572<br>Enid, OK 73702 | Property: Office equipment | 19.99 | 5th of the month | 0.00 |
| Dell Financial Services, LLC<br>One Dell Way<br>Round Rock, TX 78682 | Lease dated 1/6/2009<br>Property: Computer equipment | 590.53 | 5th of the month | 0.00 |
| East End Equipment Sales, Inc.<br>3712 Marshall Road<br>Crosby, TX 77532 | Commercial lease dated 2/17/2010<br>Property: 11700 Beaumont Highway,<br>Building C, Houston, TX | 12,000.00 | 1st of the month | 0.00 |
| IBM Credit, LLC<br>4111 Northside Parkway NW<br>Atlanta, GA 30327-3015 | Lease dated 8/31/2007<br>Property: Computer equipment | 714.28 | 5th of the month | 0.00 |
| Majors Investments<br>5804 Columbine Way<br>Oklahoma City, OK 73142-1809 | Real estate lease dated 10/14/2009<br>Property: 4316 and 4317 SW 36th Street,<br>Oklahoma City, OK | 6,000.00 | 1st of the month | 0.00 |
| Messer Bowers Company<br>PO Box 1349<br>Enid, OK 73702 | Real estate lease dated 11/1/2007<br>Property: 301 West Maine, Enid, OK. Lease<br>has been modified by agreement to provide<br>for monthly rent as set out in the next column. | 2,500.00 | 1st of the month | 0.00 |
| Metals USA Plates and Shapes<br>Southcentral, Inc.<br>PO Box 3528<br>Enid, OK 73702 | Transport services contract dated 6/10/2007<br>Terms:   $1.25 per mile | n/a | | 0.00 |

EXHIBIT

A

| Name and Address of Party to Lease or Contract | Description of Contract or Lease | Monthly Payments | Payment Due Date | Cure Payment, including Compensation for Actual Pecuniary Loss Resulting from any Default |
|---|---|---|---|---|
| National Gypsum Company<br>2001 Rexford Road<br>Charlotte, NC 28211 | Motor carrier transportation agreement dated 1/1/2010 | n/a | | 0.00 |
| Neopost Leasing<br>PO Box 45840<br>San Francisco, CA 94145-0840 | Postage services<br>Terms: Payment due upon receipt of statement | n/a | | 0.00 |
| Paccar Financial Corp.<br>c/o Laurie Smith<br>PO Box 1518<br>Bellevue, WA 98009-1518 | Truck lease agreement | | | |
| | Account 5 (900-651-601-5906581)<br>10 2008 Peterbilt 389s<br>This lease shall be deemed to have been modified to provide that the monthly payments set out in the next column shall continue for 36 months from and after December 21, 2010. The Cure Payment shall be paid by adding additional monthly payments to the end of the lease. The purchase option shall be deemed to have been exercised upon completion of all such payments. | 16,539.60 | 20th of the month | 27,207.64<br><br>The Cure Payment shall be paid by adding additional monthly payments to the end of the lease |
| | Account 6 (900-651-601-5913314)<br>5 2008 Peterbilt 389s<br>This lease shall be deemed to have been modified to provide that the monthly payments set out in the next column shall continue for 36 months from and after January 12, 2011. The Cure Payment shall be paid by adding additional monthly payments to the end of the lease. The purchase option shall be deemed to have been exercised upon completion of all such payments. | 8,251.90 | 20th of the month | 22,651.38<br><br>The Cure Payment shall be paid by adding additional monthly payments to the end of the lease |

| Name and Address of Party to Lease or Contract | Description of Contract or Lease | Monthly Payments | Payment Due Date | Cure Payment, including Compensation for Actual Pecuniary Loss Resulting from any Default |
|---|---|---|---|---|
| | Account 7 (900-7651-601-5979562) 5 2009 Peterbilt 386s This lease shall be deemed to have been modified to provide that the monthly payments set out in the next column shall continue for 36 months from and after December 19, 2011. The Cure Payment shall be paid by adding additional monthly payments to the end of the lease. The purchase option shall be deemed to have been exercised upon completion of all such payments. | 8,156.40 | 20th of the month | 13,779.49

The Cure Payment shall be paid by adding additional monthly payments to the end of the lease |
| Paul Logistics, Inc. 119 County Road 2380 Bagwell, TX 75412 | Equipment lease dated 12/16/2009 Property: Equipment | 95,717 (or such lesser amounts as may be provided under the lease, as amended) | various, per agreement with lessor | 0.00 |
| RTS Financial Service, Inc. 8601 Monrovia Lenexa, KS 66215 | Factoring agreement dated 6/16/2009, as it may have been, and may be, amended Post-Petition | n/a | | 0.00 |
| Trans Advantage One Premier Drive St. Louis, MO 63026 | Lease agreement dated 4/1/2008

Addendum 60006611 This lease shall be deemed to have been modified to provide that the monthly payments set out in the next column shall continue for 47 months from and after May 17, 2011, inclusive of the Cure Payment, with a 48th payment of 47,702.56. The purchase option shall be deemed to have been exercised upon completion of all such payments. | 37,629.14 | 29th of the month | 75,258.28

The Cure Payment shall be paid by adding additional monthly payments to the end of the lease |

| Name and Address of Party to Lease or Contract | Description of Contract or Lease | Monthly Payments | Payment Due Date | Cure Payment, including Compensation for Actual Pecuniary Loss Resulting from any Default |
|---|---|---|---|---|
| | Addendum 60006479 This lease shall be deemed to have been modified to provide that the monthly payments set out in the next column shall continue for 47 months from and after May 1, 2011, inclusive of the Cure Payment, with a 48th payment of $49,296.04. The purchase option shall be deemed to have been exercised upon completion of all such payments. | 39,076.42 | 22nd of the month | 78,152.84  The Cure Payment shall be paid by adding additional monthly payments to the end of the lease |
| Wells Fargo Equipment Finance, Inc. MAC N9306070 Suite 700 733 Marquette Avenue Minneapolis, MN 55402 | Trailer lease dated 9/17/2008 Property: Nineteen 2009 Reitnouer 48' Maxmiser Trailers | | | |
| | Supplement 0163918-102 | 6,336.00 | 28th of the month | 0.00 |
| | Supplement 0163918-103 | 6,336.00 | 28th of the month | 0.00 |
| Yale Uniform Rental 5953 East 15th Street Tulsa, OK 74112 | Uniform rental agreement | n/a | | 0.00 |
| Various insurors | All other executory insurance contracts not previously assumed or rejected | | | 0.00 |
| | TOTAL | 239,867.26 | | |