## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

In re:               )
PAUL TRANSPORTATION, INC.,    )      Case Number: 10-13022
Tax ID No. 71-0921816,        )      Chapter 11
    Debtor.              )

### SUBMISSION OF
### LIQUIDATING TRUST AGREEMENT

Paul Transportation, Inc., debtor in possession, submits the proposed Liquidating Trust Agreement contemplated under Paul Transportation, Inc.'s First Amended Plan of Reorganization. See Exhibit "1."

Respectfully submitted,

/s/ Matthew C. Goodin
Stephen W. Elliott, OBA #2685
Matthew Goodin, OBA #19327
KLINE KLINE ELLIOTT & BRYANT, PC
720 N.E. 63rd Street
Oklahoma City, OK 73105
(405) 848-4448
(405) 842-4539 (fax)
selliott@klinefirm.org
mgoodin@klinefirm.org
ATTORNEYS FOR THE DEBTOR IN
POSSESSION, PAUL TRANSPORTATION, INC.

### CERTIFICATE OF SERV ICE

This is to certify that on the 13th day of April, 2011, I electronically transmitted the above and foregoing motion to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the ECF registrants. Based on the records currently on file, the Clerk of the Court will transmit a Notice of Electronic Filing to the ECF registrants listed on the attached "Electronic Mail Notice List."

/s/ Matthew C. Goodin
Matthew Goodin, OBA #19327

# Mailing Information for Case 10-13022

## Electronic Mail Notice List

The following is the list of **parties** who are currently on the list to receive e-mail notice/service for this case.

- **Regan Strickland Beatty**   beattyr@crowedunlevy.com,
  donna.hinkle@crowedunlevy.com;kerryann.wagoner@crowedunlevy.com;ecf@crowedunlevy.com
- **Kevin Blaney**   kblaney@btlawokc.com, chorton@btlawokc.com;bmorehead@btlawokc.com
- **Brian J Boerner**   bboerner@nashfirm.com
- **G. David Bryant**   dbryant@klinefirm.org, dbryant@ecf.epiqsystems.com;jbarnes@klinefirm.org
- **Stephen W. Elliott**   selliott@klinefirm.org, klinefirm@aol.com;mmills@klinefirm.org
- **Matthew Clay Goodin**   mattgoodin@cox.net,
  mgoodin@klinefirm.org,mmills@klinefirm.org,klinefirm@aol.com
- **David W. Hammond**   sfhpc@sfhpc.net, dwhsfhpc@sfhpc.net
- **John B. Heatly**   jheatly@fellerssnider.com, sshahan@fellerssnider.com;mbellar@fellerssnider.com
- **William H. Hoch**   hochw@crowedunlevy.com,
  donna.hinkle@crowedunlevy.com;kerryann.wagoner@crowedunlevy.com;ecf@crowedunlevy.com
- **Nkem A House**   nkem.house@crowedunlevy.com,
  paul.young@crowedunlevy.com;donna.hinkle@crowedunlevy.com;paula.tarbutton@crowedunlevy.com
- **Eric L Huddleston**   ehuddleston@eliasbooks.com,
  eric.huddleston@gmail.com;wdebner@eliasbooks.com
- **Crystal A Johnson**   cjohnson@cwlaw.com, lskinner@cwlaw.com;OKC_ECF@cwlaw.com
- **Carlos D Mayes**   dmayes@nashfirm.com, daynemayes@gmail.com;rnash@nashfirm.com
- **John W. Mee**   jwm3@meehoge.com, sar@meehoge.com;meehoge11@yahoo.com
- **Lyle R. Nelson**   lyle@lylenelsonlaw.com
- **Kiran A. Phansalkar**   kphansalkar@cwlaw.com, lskinner@cwlaw.com;OKC_ECF@cwlaw.com
- **Karolina Roberts**   kroberts@eliasbooks.com, karolinaroberts23@yahoo.com
- **Loretta K Roberts**   bankruptcy@drumlaw.com, pmc@drumlaw.com
- **Andrew R. Turner**   aturner@cwlaw.com
- **U.S. Trustee**   Ustpregion20.oc.ecf@usdoj.gov
- **Edward M Zachary**   edward.zachary@bryancave.com

## Manual Notice List

The following is the list of **parties** who are **not** on the list to receive e-mail notice/service for this case (who therefore require manual noticing/service). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

    **Warren M. Armstrong**
    Miller Curtis & Weisbrod LLP
    11551 Forest Central Dr Ste 300
    Dallas, TX 75243

    **BKD, LLP**
    ,

    **L. Vance Brown**
    Elias Books Brown & Nelson PC
    Two Leadership Square, Suite 1300
    211 N. Robinson
    Oklahoma City, OK 73102

# LIQUIDATING TRUST AGREEMENT

**dated as of**

[_____]

**Between**

## THE LIQUIDATING TRUST FORMED UNDER THE CHAPTER 11 PLAN FOR PAUL TRANSPORTATION, INC.

**and**

[_____]

**as Liquidating Trustee**

EXHIBIT

tabbies

1

# TABLE OF CONTENTS

PAGE

Article 1. DEFINITIONS AND INTERPRETATIONS.................................................................. 1

    **1.1**    Definitions. ...................................................................................................... 1

    **1.2**    Capitalized Terms Not Defined. ........................................................................ 3

    **1.3**    Interpretation...................................................................................................... 3

Article 2. ESTABLISHMENT OF THE LIQUIDATING TRUST............................................. 4

    **2.1**    Creation and Purposes of the Liquidating Trust. .................................................. 4

    **2.2**    Liquidating Trustee's Acceptance. ....................................................................... 4

Article 3. ADMINISTRATION OF THE LIQUIDATING TRUST ........................................... 4

    **3.1**    Rights, Powers and Privileges. ............................................................................ 4

    **3.2**    Agents and Professionals. .................................................................................... 7

    **3.3**    Authentication of Documents. .............................................................................. 7

    **3.4**    Trade or Business................................................................................................. 7

Article 4. DISTRIBUTIONS FROM THE LIQUIDATING TRUST ......................................... 7

    **4.1**    Method of Distributions........................................................................................ 7

    **4.2**    Prohibited Distributions – Disputed Claims. ........................................................ 8

    **4.3**    Means of Cash Payments. .................................................................................... 8

    **4.4**    Compliance with Tax Requirements..................................................................... 8

    **4.5**    De Minimis Distributions to Principal Beneficiaries............................................ 8

Article 5. THIRD PARTY RIGHTS AND LIMITATION OF LIABILITY ................................ 8

    **5.1**    Limitation of Liability. ........................................................................................ 8

    **5.2**    Indemnification.................................................................................................... 9

Article 6. SELECTION, REMOVAL AND COMPENSATION OF THE LIQUIDATING
               TRUSTEE..................................................................................................... 10

    **6.1**    Initial Liquidating Trustee. ................................................................................ 10

    **6.2**    Term of Service. ................................................................................................ 10

    **6.3**    Resignation of the Liquidating Trustee. ............................................................. 10

    **6.4**    Removal of the Liquidating Trustee. .................................................................. 10

    **6.5**    Appointment of Successor Liquidating Trustee. ................................................. 10

    **6.6**    Termination of the Liquidating Trust. ................................................................ 11

    **6.7**    Powers and Duties of Successor Liquidating Trustee. ........................................ 11

    **6.8**    Trust Continuance.............................................................................................. 11

i

| | | |
|---|---|---|
| **6.9** | Compensation and Costs of Administration. | 11 |
| **6.10** | Fees and Expenses. | 12 |
| Article 7. | ADVISORY COMMITTEE | 12 |
| **7.1** | Establishment of Advisory Committee. | 12 |
| **7.2** | Action by Advisory Committee. | 13 |
| **7.3** | Access to Professionals. | 13 |
| **7.4** | No Compensation; Expense Reimbursement. | 13 |
| **7.5** | Joint Interest. | 14 |
| Article 8. | MAINTENANCE OF RECORDS; REPORTING | 14 |
| **8.1** | Books and Records. | 14 |
| **8.2** | Reports to be Filed with the Bankruptcy Court. | 14 |
| **8.3** | Tax Returns and Payments. | 15 |
| Article 9. | MISCELLANEOUS | 15 |
| **9.1** | Notices. | 15 |
| **9.2** | No Bond. | 16 |
| **9.3** | Governing Law; Submission to Jurisdiction; Service of Process. | 16 |
| **9.4** | Successors and Assigns. | 16 |
| **9.5** | No Execution. | 16 |
| **9.6** | Amendment. | 16 |
| **9.7** | Severability. | 17 |
| **9.8** | Cooperation. | 17 |

## TABLE OF EXHIBITS

Exhibit A - Engagement Letter

Exhibit B - Advisory Committee

## LIQUIDATING TRUST AGREEMENT

This LIQUIDATING TRUST AGREEMENT, dated as of [_____],
2011 (this "Agreement"), is made by and among [_____] (the "Liquidating Trustee") on
the one hand, Paul Transportation, Inc. (the "Debtor") and the Official Committee of Unsecured
Creditors ("Committee") in the chapter 11 case of the Debtor (the "Case"), acting on behalf of
the Liquidating Trust ("Liquidating Trust"), to be established under the "Debtor's Amended Plan
of Reorganization (Dated _____, 2011)" as it was confirmed by Bankruptcy Court order
entered on [_____, 2011 (the "Plan"), on the other hand.

### RECITALS

A.      The Liquidating Trust is a trust formed pursuant to and recognized under
the Plan.

B.      Pursuant to the Plan, the Liquidating Trust holds title to certain assets in
trust for holders of Allowed General Unsecured Claims under the Plan, and such holders are
entitled thereunder to receive the net proceeds of those assets pursuant to the Plan.

C.      Pursuant to Plan, the Liquidating Trustee is obligated and authorized,
among other things, to liquidate the assets of the Liquidating Trust and distribute them to the
holders of Allowed General Unsecured Claims that are entitled to receive the net proceeds of
those assets pursuant to the Plan.

D.      The Liquidating Trust is intended to be treated, for U.S. federal income
Tax purposes, in part as a "Liquidating Estate" within the meaning of Treasury Regulations
section 301.7701-4(d), for the benefit of Beneficiaries entitled to Distributions.

### AGREEMENT

NOW, THEREFORE, in consideration of the premises and the mutual covenants
contained herein, the Liquidating Trust and the Liquidating Trustee agree as follows:

### ARTICLE 1.
### DEFINITIONS AND INTERPRETATIONS

**1.1**    Definitions.

The following capitalized terms used in this Agreement will have the respective
meanings ascribed to them in this Section 1.1:

(a)     "Advisory Committee" has the meaning set forth in Section 7.11.

(b)     "Agreement" has the meaning set forth in the introductory
paragraph to this Agreement.

(c)     "Allowed General Unsecured Claims" means allowed Claims held
by Beneficiaries.

1

(d)  "Annual Receipts/Disbursements Report" means, with respect to each calendar year, an unaudited report reflecting: (i) all Liquidating Trust Assets received or reduced to money by the Liquidating Trust during such calendar year; (ii) all Liquidating Trust Assets held by the Liquidating Trust at the end of such calendar year; and (iii) all Liquidating Trust Assets disbursed during such calendar year, in each case itemized for the individual General Trust Accounts.

(e)  "Beneficiary" means a person or entity that holds an allowed Class 22 Claim, as defined by the Plan, and includes a person or entity that holds an allowed Class 21 Claim, as defined under the Plan, and which timely elects to receive the treatment proposed under the Plan for a Class 22 Claim.  The plural form "Beneficiaries" is used herein to refer to more than one Beneficiary.

(f)  "Current Report" means a report filed with the Bankruptcy Court by the Liquidating Trustee, on behalf of the Liquidating Trust, describing developments affecting the Liquidating Trust in any material respect (as determined by the Liquidating Trustee in his reasonable discretion) in reasonable detail.

(g)  "Debtor" has the meaning set forth in the introductory paragraph to this Agreement.

(h)  "Distributions" means cash payments made by the Liquidating Trust to Beneficiaries on account of Allowed General Unsecured Claims, pursuant to Article 4 of this Agreement.

(i)  "Engagement Letter" means that certain Engagement Letter attached hereto as Exhibit A, entered into concurrently with this Agreement, by and among the Liquidating Trustee, on the one hand, and the Debtor and Committee on behalf of the Liquidating Trust, on the other hand.

(j)  "General Trust Accounts" means one or more segregated trust accounts to be established and maintained to collect all cash delivered to the Liquidating Trust from any source.

(k)  "Indemnified Parties" means, collectively, the Liquidating Trustee and the members of the Advisory Committee in their capacities as such.

(l)  "Liquidating Trust" has the meaning set forth in Recital A to this Agreement.

(m)  "Liquidating Trust Assets" means collectively: (i) all assets of the Liquidating Trust as set forth in the Plan and the proceeds thereof; and (ii) any and all interest or other income earned on any of the foregoing.

(n)  "Liquidating Trust Expenses" means any and all reasonable fees, costs and expenses incurred by the Liquidating Trustee (or any professional or other person or entity engaged by the Liquidating Trustee and/or the Liquidating Trust in

accordance with this Agreement) in connection with the performance by the Liquidating Trustee of its duties under this Agreement.

(o)     "Liquidating Trustee" has the meaning set forth in the introductory paragraph to this Agreement.

(p)     "Liquidating Trustee's Professionals" means the attorneys and other retained professionals of the Liquidating Trustee, in such capacities.

(q)     "Quarterly Receipts/Disbursements Report" means, with respect to each of the first three calendar quarters of each calendar year, an unaudited report reflecting: (i) all Liquidating Trust Assets received by the Liquidating Trust or reduced to money during such calendar quarter; (ii) all Liquidating Trust Assets held by the Liquidating Trust at the end of such quarter; and (iii) all Liquidating Trust Assets disbursed during such calendar quarter, in each case itemized for the individual General Trust Accounts.

(r)     "Tax" means: (i) any net income, alternative or add-on minimum, gross income, gross receipts, sales, use, ad valorem, value added, transfer, franchise, profits, license, property, environmental or other tax, assessment or charge of any kind whatsoever (together in each instance with any interest, penalty, addition to tax or additional amount) imposed by any U.S. federal, state, local or foreign taxing authority; or (ii) any liability for payment of any amounts of the foregoing types as a result of being a member of an affiliated, consolidated, combined or unitary group, or being a party to any agreement or arrangement whereby liability for payment of any such amounts is determined by reference to the liability of any other entity.

**1.2**    Capitalized Terms Not Defined.

Capitalized terms used but not defined in this Agreement will have the meanings ascribed to them in the Plan.

**1.3**    Interpretation.

1.3.1    Certain References. Unless the context otherwise requires, (a) all references in this Agreement to Sections, Articles or Exhibits are to Sections, Articles or Exhibits of or to this Agreement, (b) words in the singular include the plural and vice versa, and (c) the verb "will" shall have a mandatory connotation, indicating the parties' respective obligations hereunder. Whenever the words "include," "includes" or "including" are used in this Agreement, they will be deemed to be followed by the words "without limitation." All references to "$" or dollar amounts are to lawful currency of the United States.

1.3.2    Titles and Headings. Titles and headings to Sections, Articles and Schedules in or to this Agreement are inserted for convenience of reference only, and are not intended to be a part of or to affect the meaning or interpretation of this Agreement.

3

1.3.3   Inconsistencies with the Plan.  In the event of any inconsistency between any provision of this Agreement, on the one hand, and any provision of the Plan, on the other hand, the provisions of the Plan will govern and control.

## ARTICLE 2.
## ESTABLISHMENT OF THE LIQUIDATING TRUST

### 2.1   Creation and Purposes of the Liquidating Trust.

Pursuant to the Plan and in accordance with the Bankruptcy Code, the Debtor, the Committee and the Liquidating Trustee, hereby create a trust as of the Effective Date, which is the Liquidating Trust contemplated by the Plan.  The Liquidating Trust is established for the purposes of liquidating and distributing the Liquidating Trust Assets for the benefit of the Beneficiaries in accordance with the Plan and this Agreement and no other.  The Liquidating Trust has no objective to, and will not, engage in the conduct of a trade or business and, subject to Section 6.6, will terminate upon the completion of its liquidation and distribution duties hereunder.  With respect to those matters as to which the Plan grants the Liquidating Trust authority as a representative of the Debtor's estate, and only as to those matters, the Liquidating Trust shall be a "representative of the estate" under section 1123(b)(3)(B) of the Bankruptcy Code.

### 2.2   Liquidating Trustee's Acceptance.

The Liquidating Trustee hereby accepts the duties imposed on him by this Agreement and agrees to observe and perform such duties, on and subject to the terms and conditions set forth in this Agreement.

## ARTICLE 3.
## ADMINISTRATION OF THE LIQUIDATING TRUST

### 3.1   Rights, Powers and Privileges.

3.1.1   General.  The Liquidating Trustee shall have the rights, powers and privileges to act on behalf of the Liquidating Trust that are expressly provided in the Plan, such other rights, powers and privileges as are reasonably necessary to administer the Liquidating Trust on behalf of the Beneficiaries in accordance with the Plan, and such other rights, powers and privileges as the Bankruptcy Court may determine, in order to administer the Liquidating Trust in accordance with the Plan.  Such rights, powers and privileges shall include the authority to:

(a)   execute all agreements, instruments and other documents, and effect all other actions necessary or appropriate to liquidate the Liquidating Trust Assets;

(b)   accept, preserve, receive, collect, manage, transfer, invest, supervise, protect and liquidate the Liquidating Trust Assets in accordance with the Plan and this Agreement;

(c)   review, analyze and investigate any and all Designated Avoidance Actions;

4

(d)    prosecute, settle, adjust, retain, enforce or abandon any and all Designated Avoidance Actions;

(e)    review, analyze and, where appropriate, file an objection to any Allowed General Unsecured Claim filed against the Debtor to the extent such General Unsecured Claim has not already been the subject of an order adjudicating or compromising such claim;

(f)    prosecute, settle, adjust, retain, enforce, or abandon any objection to a General Unsecured Claims, as contemplated by the preceding subparagraph (f);

(g)    calculate and make Distributions of the Liquidating Trust Assets as prescribed in the Plan and this Agreement;

(h)    raise defenses, counterclaims and/or crossclaims in connection with any actions or claims adverse to the Liquidating Trust;

(i)    retain and compensate the services of professionals or other persons or entities to represent, advise and assist the Liquidating Trustee in the fulfillment of his responsibilities in connection with this Agreement;

(j)    file appropriate Tax returns on behalf of the Liquidating Trust and pay Taxes or other obligations owed by the Liquidating Trust;

(k)    purchase insurance with such coverage and limits as he determines, in his reasonable discretion, to be necessary, appropriate or desirable (including insurance covering the Indemnified Parties for liabilities incurred in connection with the performance of duties under this Agreement);

(l)    determine the manner of ascertainment of income and principal of the assets in the Liquidating Trust, and the apportionment of income and principal among such assets;

(m)    appear and participate in any proceeding before the Bankruptcy Court with respect to any matter regarding or relating to this Agreement, the Liquidating Trust, the Liquidating Trust Assets, the Designated Avoidance Actions, or disputes with respect to General Unsecured Claims;

(n)    sue, defend and participate, as a party or otherwise, in any judicial, administrative, arbitrative or other proceeding relating to this Agreement, the Liquidating Trust or the Liquidating Trust Assets;

(o)    consult with the Advisory Committee in advance, at such times and with respect to such issues relating to the conduct of the Liquidating Trust, including commencement of litigation, retention of counsel, settlement/compromise of any litigation, claims objections, and the timing and amount of distributions and reserves therefor;

(p)    pay all Liquidating Trust Expenses;

(q)    execute, deliver and perform such other agreements and documents or exercise such other powers and duties as the Liquidating Trustee determines, in his reasonable discretion, to be necessary, appropriate or desirable to administer the Liquidating Trust in accordance with the Plan;

(r)    make all necessary filings on behalf of the Liquidating Trust in accordance with the Plan, and any applicable law, statute or resolution;

(s)    terminate the Liquidating Trust in accordance with the terms of the Plan and this Agreement;

(t)    make all necessary filings on behalf of the Liquidating Trust to close the Case; and

(u)    make distributions to the Beneficiaries as provided under Article 4.

3.1.2    Certain Actions Requiring Consent of Advisory Committee. Notwithstanding anything to the contrary in this Agreement, the Liquidating Trustee will not take any of the following actions without the prior consent of the Advisory Committee (by majority vote of its members) or an order of the Bankruptcy Court:

(a)    incur any indebtedness, whether secured or unsecured;

(b)    purchase insurance;

(c)    make any Distributions to Beneficiaries pursuant to Article 4; or

(d)    terminate the Liquidating Trust in accordance with the terms of the Plan and this Agreement.

3.1.3    Court Approval Not Required. Except as otherwise provided in this Agreement, the Liquidating Trustee will not be required to obtain the order or approval of the Bankruptcy Court or any other court of competent jurisdiction in, or account to the Bankruptcy Court or any other court of competent jurisdiction for, the exercise of any right, power or privilege conferred hereunder.

3.1.4    Right to Seek Court Approval. Notwithstanding the foregoing, where the Liquidating Trustee determines, in his reasonable discretion, that it is necessary, appropriate or desirable, the Liquidating Trustee will have the right to submit to the Bankruptcy Court or any other court of competent jurisdiction any question or questions regarding any specific action proposed to be taken by the Liquidating Trustee with respect to this Agreement, the Liquidating Trust or the Liquidating Trust Assets, including the administration and distribution of the Liquidating Trust Assets and the termination of the Liquidating Trust. Pursuant to the Plan, the Bankruptcy Court has retained jurisdiction for such purposes and may approve or disapprove any such proposed action upon motion by the Liquidating Trustee.

3.1.5    No Liability. In addition to the other limitations on liability set forth in this Agreement, the Liquidating Trustee and the Liquidating Trustee's Professionals will have no

liability for taking any action approved by the Bankruptcy Court or any other court of competent jurisdiction or for otherwise complying with an order of the Bankruptcy Court or any other court of competent jurisdiction.

**3.2**    Agents and Professionals.

Except as otherwise provided in this Agreement:  (a) the Liquidating Trustee may consult with independent legal counsel to be selected by it and the advice or opinion of such counsel will be full and complete personal protection to the Liquidating Trustee in respect of any action taken or suffered by it in good faith and in reliance on, or in accordance with, such advice or opinion; and (b) persons (including any professionals retained by the Liquidating Trustee) dealing with the Liquidating Trustee shall have recourse only to the Liquidating Trust Assets, if any, to satisfy any liability incurred by the Liquidating Trustee, and (subject to Section 5.1 with respect to liabilities resulting from the Liquidating Trustee's willful misconduct, or gross negligence) the Liquidating Trustee will have no personal or individual obligation to satisfy any such liability.  Under no circumstances shall the Debtor or the Reorganized Debtor be liable for any fees, costs or expenses of the Liquidating Trustee or the Liquidating Trust.

**3.3**    Authentication of Documents.

The Liquidating Trustee will not be responsible for the title, validity or genuineness of any property or evidence of title thereto received by it or delivered by it pursuant to this Agreement and will be held harmless and will be fully indemnified (pursuant to Section 5.2) by the Liquidating Trust in acting upon any document believed by him in good faith to be genuine and delivered by the proper party or parties.

**3.4**    Trade or Business.

The Liquidating Trust will not at any time, on behalf of the Liquidating Trust, operate as a business entity within the meaning of Treasury Regulations section 301.7701-2, or engage in any trade or business as proscribed by Treasury Regulations section 301.7701-4(d), and the Liquidating Trustee will not use or dispose of any part of the Liquidating Trust Assets in furtherance of any trade or business. Notwithstanding the foregoing, the Liquidating Trustee will not be prohibited from engaging in any trade or business for his own account.

## ARTICLE 4.
## DISTRIBUTIONS FROM THE LIQUIDATING TRUST

**4.1**    Method of Distributions.

The Liquidating Trustee will make all Distributions of cash required by this Agreement and the Plan. The Liquidating Trustee's authority and obligations with respect to Distributions (including undeliverable Distributions) are set forth in the Plan.

**4.2**   Prohibited Distributions – Disputed Claims.

Notwithstanding anything to the contrary in this Agreement, no payments or Distributions will be made on account of a Disputed Claim unless and until such Claim becomes an Allowed Claim.

**4.3**   Means of Cash Payments.

Except as otherwise provided in this Agreement, cash payments made pursuant to this Agreement will be in United States currency by check or, at the option of the Liquidating Trustee, by wire transfer from a domestic bank as to any holder of an Allowed Claim who requests payments be made by wire transfer; provided, however, that cash payments to foreign Beneficiaries may be made, at the option of the Liquidating Trustee, in such funds and by such means as are necessary or customary in a particular foreign jurisdiction with the exchange rate determined at the time of such transfer. If a check included in a distribution to a Beneficiary is not cashed within 90 days of the issuance thereof, the Liquidating Trustee will void such check and such distribution will be treated as undeliverable.

**4.4**   Compliance with Tax Requirements.

To the extent applicable, the Liquidating Trustee will comply with all Tax withholding and reporting requirements imposed on it by any governmental unit, and all Distributions pursuant to the Plan will be subject to such withholding and reporting requirements. The Liquidating Trustee will be authorized to take any actions that he determines, in his reasonable discretion, to be necessary, appropriate or desirable to comply with such withholding and reporting requirements. Notwithstanding anything to the contrary in this Agreement, each entity receiving a distribution of cash pursuant to this Agreement will have sole and exclusive responsibility for the satisfaction and payment of any Tax obligations imposed on it by any governmental unit on account of such distribution, including income, withholding and other Tax obligations.

**4.5**   De Minimis Distributions to Principal Beneficiaries.

No Distribution will be required to be made under this Agreement to any Beneficiary unless such Beneficiary is to receive at least $25.00. To the extent that any interim Distribution is not paid to a Beneficiary on the grounds that it amounts to less than $25.00, the amount of such withheld Distribution shall be reserved for addition to any future Distribution or as the final Distribution to such Beneficiary, and shall be made at that time if the total distribution is at least $25.00.

## ARTICLE 5.
## THIRD PARTY RIGHTS AND LIMITATION OF LIABILITY

**5.1**   Limitation of Liability.

Notwithstanding anything to the contrary in this Agreement, in exercising the rights granted hereunder, the Liquidating Trustee will use the same degree of care and skill as an individual of ordinary prudence, discretion and judgment would exercise or use in such

8

individual's own affairs. The Liquidating Trustee will not be liable with respect to any action they take or omit to take in good faith with the consent, or at the direction, of the Advisory Committee to the extent this Agreement expressly contemplates the Advisory Committee may give such consent or direction. The Liquidating Trustee will not be liable for punitive, exemplary, consequential, special or other damages for a breach of this Agreement under any circumstances, or for any other act or omission in connection with the performance of their duties or rights hereunder, not constituting willful misconduct or gross negligence. The Liquidating Trust and the Liquidating Trustee will neither have nor incur any liability to any entity for any act taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, implementation, confirmation or consummation of this Agreement or any contract, instrument, release or other agreement or document created or entered into, or any other act taken or omitted to be taken, in connection with this Agreement; provided, however, that the foregoing provisions of this paragraph will have no effect on (a) the liability of any entity (other than the Liquidating Trustee) that would otherwise result from the failure to perform or pay any obligation or liability under this Agreement or any contract, instrument, release or other agreement or document to be entered into or delivered in connection with this Agreement; or (b) the liability of any entity that otherwise would result from any act or omission to the extent that such act or omission is determined in a Final Order to have constituted willful misconduct or gross negligence.

**5.2**    Indemnification.

The Indemnified Parties will be indemnified by the Liquidating Trust for any losses, claims, damages, liabilities or expenses, including reasonable attorneys' fees, disbursements and related expenses, that the Indemnified Parties may incur or to which the Indemnified Parties may become subject in connection with any action, suit, proceeding or investigation brought by or threatened against one or more of the Indemnified Parties on account of any action or omission or breach of contract by the Liquidating Trustee in its capacity as such; provided, however, that the Liquidating Trust will not be required to indemnify any Indemnified Party for any losses, claims, damages, liabilities or expenses, including reasonable attorneys' fees, disbursements and related expenses, due to any action or omission or breach of contract by such Indemnified Party constituting bad faith, fraud, willful misconduct or gross negligence; provided further that (except as provided in the preceding proviso) nothing in this Section 5.2 will be deemed to restrict the Liquidating Trustee's right to receive an indemnity based on any act or omission taken in accordance with the provisions of this Agreement. Without limiting the generality or effect of the foregoing, within five (5) business days after written request by an Indemnified Party (including the Liquidating Trustee) to the Liquidating Trustee and the Advisory Committee, the Liquidating Trustee will, in accordance with such request (but without duplication), from the Liquidating Trust Assets (a) pay such expenses on behalf of the Indemnified Party, (b) advance to the Indemnified Party cash in an amount sufficient to pay such expenses, or (c) reimburse the Indemnified Party for such expenses; provided, however, that the Indemnified Party provides an undertaking to repay the amount so paid, advanced or reimbursed upon the entry of a Final Order finding that such Indemnified Party was not entitled to indemnity under the provisions of this Section 5.2. Indemnity Claims under this paragraph shall be paid with the priority provided under the Plan.

## ARTICLE 6.
## SELECTION, REMOVAL AND COMPENSATION OF THE LIQUIDATING TRUSTEE

**6.1**    Initial Liquidating Trustee.

The initial Liquidating Trustee will be [_____].

**6.2**    Term of Service.

The Liquidating Trustee will serve until the earliest of the Liquidating Trustee's resignation or removal or the termination of the Liquidating Trust in accordance with this Agreement.

**6.3**    Resignation of the Liquidating Trustee.

The Liquidating Trustee may resign at any time by giving the Advisory Committee at least 30 days' written notice of the Liquidating Trustee's intention to do so and filing such notice with the Bankruptcy Court. In the event of a resignation, the resigning Liquidating Trustee (or the successor Liquidating Trustee) will render to the Bankruptcy Court and the Advisory Committee a full and complete accounting of monies and assets received, disbursed and held during the term of office of the resigning Liquidating Trustee. The resignation will be effective on the latest of (a) the date specified in the notice; (b) the date that is 30 days after the date the notice is delivered to the Advisory Committee; (c) the date the accounting described in the preceding sentence is delivered; (d) the date the successor Liquidating Trustee accepts its appointment as such; and (e) the date that is 60 days after the date the notice is filed with the Bankruptcy Court. Notwithstanding the resignation of the Liquidating Trustee pursuant to this Section 6.3, the rights of the resigning Liquidating Trustee under Sections 3.2, 3.3, 5.1 and 5.2 with respect to acts or omissions occurring prior to the effectiveness of such resignation will continue for the benefit of such resigning Liquidating Trustee following the effectiveness of such resignation.

**6.4**    Removal of the Liquidating Trustee.

The Liquidating Trustee may be removed by order of the Bankruptcy Court for good cause, which will mean any act or omission by the Liquidating Trustee in connection with the performance of its rights or duties hereunder constituting bad faith, fraud, willful misconduct or gross negligence, or breach of this Agreement. Notwithstanding the removal of the Liquidating Trustee pursuant to this Section 6.4, (i) the rights of the removed Liquidating Trustee under Section 5.1 and Section 5.2 with regard to acts or omissions occurring prior to the effectiveness of such removal will continue for the benefit of such removed Liquidating Trustee following such removal, and (ii) any other amounts that may be or may become due and payable shall be determined in accordance with Engagement Letter.

**6.5**    Appointment of Successor Liquidating Trustee.

Prior to the effectiveness of either the resignation of the Liquidating Trustee pursuant to Section 6.3 or the removal of the Liquidating Trust pursuant to Section 6.4, as the case may be, the Advisory Committee will (a) identify a successor Liquidating Trustee to fill the

vacancy (b) file with the Bankruptcy Court notice of the proposed appointment and serve such notice upon Beneficiaries with an opportunity to object and (c) seek the approval of the Bankruptcy Court which shall be necessary for the appointment to become effective. Except as otherwise ordered by the Bankruptcy Court, any successor Liquidating Trustee so appointed must consent to and accept in writing the terms of this Agreement and agree that the provisions of this Agreement are binding upon and inure to the benefit of the successor Liquidating Trustee and all of such successor Liquidating Trustee's heirs and legal and personal representatives, successors or assigns. If the Advisory Committee does not identify a successor Liquidating Trustee within 30 days of the delivery of a notice of resignation, the resigning Liquidating Trustee will have the right to request that the Bankruptcy Court appoint a successor Liquidating Trustee.

## 6.6   Termination of the Liquidating Trust.

The Liquidating Trust shall terminate when the Liquidating Trustee has performed all of his duties under the Plan and this Agreement, including the final distribution of all the property of the Liquidating Trust, which date shall not be more than 36 months after the Effective Date; provided, however, that, upon a motion filed before the expiration of such period by a party in interest, including the Liquidating Trustee, the Bankruptcy Court may extend the duration of the Liquidating Trust so long as shall be necessary to liquidate and distribute property and resolve any and all litigation arising under or relating to the Plan or the Case.

## 6.7   Powers and Duties of Successor Liquidating Trustee.

A successor Liquidating Trustee will have all the rights, powers, privileges and duties of its predecessor.

## 6.8   Trust Continuance.

The resignation or removal of the Liquidating Trustee will not terminate the Liquidating Trust or revoke any existing agency created pursuant to this Agreement or invalidate any action theretofore taken by the Liquidating Trustee.

## 6.9   Compensation and Costs of Administration.

The Liquidating Trustee is entitled to receive fair and reasonable compensation for his or her services, to be paid from the Liquidating Trust, to the extent there is cash available in the General Trust Accounts for that purpose. The initial Liquidating Trustee's fees are as set forth in the Engagement Letter. In addition, all reasonable costs and expenses incurred by the Liquidating Trustee in administering the Liquidating Trust, in carrying out its other responsibilities under this Agreement or in any manner connected, incidental or related thereto (including the cost of professionals or other persons or entities that may, in accordance with this Agreement, be employed by the Liquidating Trustee) shall be paid by the Liquidating Trust, at the direction of the Liquidating Trustee, from the General Trust Accounts, to the extent there is cash available therein for such purpose. Under no circumstances shall the Debtor or the Reorganized Debtor be liable for any fees, costs or expenses of the Liquidating Trustee, the Liquidating Trust, or any professionals employed thereby. The terms of the Engagement Letter

11

are incorporated herein by reference and for all purposes are deemed to be an integral part of this Agreement to the same extent as if restated in full herein.

## 6.10   Fees and Expenses.

Pursuant to Section 6.9, the Liquidating Trustee and any professional to the Liquidating Trustee shall be entitled to receive payment of allowed fees and reimbursement of allowed expenses from the assets of the Liquidating Trust, with such fees and expenses to be sought through applications filed and served in accordance with the procedures applicable under 11 U.S.C. §§ 330 and 331, and Rules 2002 and 2016, Federal Rule of Bankruptcy Procedure, and allowed by the Court after appropriate notice and hearing.

## ARTICLE 7.
## ADVISORY COMMITTEE

## 7.1   Establishment of Advisory Committee.

7.1.1   Formation and Initial Membership. An Advisory Committee shall be deemed to have been formed on the Effective Date of the Plan. The initial membership of the Advisory Committee shall be as set forth on Exhibit B hereto.

7.1.2   Term of Members. Each member of the Advisory Committee will serve until the earliest of (a) such member's (i) death, (ii) resignation or (iii) removal and (b) the termination of the Liquidating Trust in accordance with this Agreement.

7.1.3   Resignation of Members. A member of the Advisory Committee may resign at any time by written notice to the Liquidating Trustee and the other members of the Advisory Committee.

7.1.4   Removal of Members. Any member of the Advisory Committee may be removed in the event that he or she has become unable to discharge his or her duties hereunder due to accident, physical deterioration or mental incompetence, for a consistent pattern of neglect and failure to perform, or to participate in performing, the duties of such member or for other good cause; such removal will be made by vote of the Advisory Committee or at the recommendation of the Liquidating Trustee with the approval of the Bankruptcy Court.

7.1.5   Filling of Vacancies. Vacancies on the Advisory Committee will be filled as follows: (i) any vacancy resulting from the death or resignation of any member of the Advisory Committee will be filled with an individual designated in writing by such member as his or her successor prior to his or her death or the effectiveness of his or her resignation or, if such member did not so designate an individual as his or her successor, an individual designated by the Bankruptcy Court at the recommendation of the Liquidating Trustee, whereupon the individual filling such vacancy will be deemed a member of the Advisory Committee for all purposes of this Agreement and (ii) any vacancy resulting from the removal of a member of the Advisory Committee will be filled by an individual that holds or is employed by the holder of an Allowed Claim that is not already represented on the Advisory Committee, as such individual is designated by the Bankruptcy Court at the recommendation of the Liquidating Trustee,

12

whereupon the individual filling such vacancy will be deemed a member of the Advisory Committee for all purposes of this Agreement.

## 7.2    Action by Advisory Committee.

So long as there are at least two members of the Advisory Committee then in office, the act of a majority of the members of the Advisory Committee then in office will be the act of the Advisory Committee with respect to any matter which requires the consent, direction or other act of the Advisory Committee.

## 7.3    Access to Professionals.

The members of the Advisory Committee will at all reasonable times have complete access to any professionals or other persons or entities retained by the Liquidating Trustee on behalf of the Liquidating Trust, and will also have complete access to all information generated by them or otherwise available to the Liquidating Trust or the Liquidating Trustee (subject to any confidentiality restrictions on such information); provided that in no event will the members of the Advisory Committee have any right to consult with counsel to the Liquidating Trust or obtain any information in such a manner as would result in the waiver of attorney-client or other applicable privilege belonging to the Liquidating Trust or Liquidating Trustee, unless, however, the Liquidating Trust and any members of the Advisory Committee enter into a joint defense agreement or other similar agreement that permits the sharing of such information while preserving any and all applicable privileges, nor shall any member of the Advisory Committee have any right to access information related to any matter in which its/their interests are adverse to the Liquidating Trust or the Reorganized Debtor.

## 7.4    No Compensation; Expense Reimbursement.

Members of the Advisory Committee will receive no compensation for their services from the Liquidating Trust. However, the Liquidating Trust will promptly reimburse each member of the Advisory Committee for any reasonable out-of-pocket expenses incurred by such member in connection with travel to or from meetings with the Liquidating Trustee and/or other Advisory Committee meetings or otherwise in connection with the performance of such member's duties as a member of the Advisory Committee in accordance with the provisions of this Agreement. Such reimbursement will be deemed a Liquidating Trust Expense of the Liquidating Trust.

### 7.4.1    Consent Process.

(a)    Information. In the event the Liquidating Trustee is required to obtain the consent of the Advisory Committee pursuant to any provision of this Agreement, the Liquidating Trustee will provide the Advisory Committee with a written notice stating that its consent is being sought pursuant to that provision, describing in detail the nature and scope of the action the Liquidating Trustee proposes to take and explaining in detail the reasons why the Liquidating Trustee desires to take such action. The Liquidating Trustee will also provide the Advisory Committee with such reasonable access to professionals or other persons or entities retained by the Liquidating Trustee on behalf of the Liquidating Trust as the Advisory Committee may reasonably request during the time that the Liquidating Trustee is considering

13

such action, and shall also provide the Advisory Committee the opportunity, at reasonable times and for reasonable periods of time, to discuss and comment on such action with the Liquidating Trustee; provided that in no event will the Advisory Committee or its members have any right to consult with counsel to the Liquidating Trust or obtain any information in such a manner as would result in the waiver of attorney-client or other applicable privilege belonging to the Liquidating Trust, unless, however, the Liquidating Trust and any members of the Advisory Committee enter into a joint defense agreement or other similar agreement that permits the sharing of such information while preserving any and all applicable privileges, nor shall any member of the Advisory Committee have any right to access information related to any matter in which its/their interests are adverse to the Liquidating Trust.

(b)    Timing. The Advisory Committee must consider in good faith and in a timely fashion any request for its consent by the Liquidating Trustee and must in any event advise the Liquidating Trustee of its consent or its objection to the proposed action within 5 Business Days of receiving the original request for consent from the Liquidating Trustee. If the Advisory Committee does not advise the Liquidating Trustee of its consent or its objections to the action within 5 Business Days of receiving notice regarding such request, the Advisory Committee's consent to the proposed actions will be deemed to have been affirmatively granted. The Liquidating Trustee will be entitled to rely on any written consent received from a member of the Advisory Committee believed by the Liquidating Trustee to be genuine and delivered by such member.

## 7.5    Joint Interest.

It is expressly acknowledged that the members of the Advisory Committee and the Liquidating Trustee share a joint interest in the successful prosecution of the Designated Avoidance Actions and entry into an arrangement to share information based upon such joint interest will be deemed sufficient to preserve and protect privilege.

## ARTICLE 8.
## MAINTENANCE OF RECORDS; REPORTING

## 8.1    Books and Records.

The Liquidating Trustee will maintain books and records containing a description of all property from time to time constituting the Liquidating Trust Assets, and an accounting of all receipts and disbursements. Such books and records will be open to inspection by any Beneficiary, the Advisory Committee or any member thereof or the Bankruptcy Court at any reasonable time during normal business hours; provided that, in the case of a Beneficiary, such Beneficiary gives the Liquidating Trustee at least three (3) Business Day's prior notice of such inspection.

## 8.2    Reports to be Filed with the Bankruptcy Court.

8.2.1    Quarterly Reports. Within 45 days after the end of each of the first three calendar quarters of each calendar year, the Liquidating Trustee, on behalf of the Liquidating Trust, will file a Quarterly Receipts/Disbursements Report with the Bankruptcy Court (unless the

14

Chapter 11 Case has theretofore been closed) and will deliver a copy thereof to each member of the Advisory Committee.

8.2.2    Annual Reports. Within 90 days after the end of each calendar year, the Liquidating Trustee, on behalf of the Liquidating Trust, will file an Annual Receipts/Disbursements Report with the Bankruptcy Court (unless the Case has theretofore been closed) and will deliver a copy thereof to each member of the Advisory Committee.

8.2.3    Current Reports. In the event of developments affecting the Liquidating Trust in any material respect (as determined by the Liquidating Trustee in its reasonable discretion), the Liquidating Trustee, on behalf of the Liquidating Trust, will file promptly with the Bankruptcy Court (unless the Case has theretofore been closed) a Current Report and will deliver a copy thereof to each member of the Advisory Committee. Such Current Reports need not contain information that the Liquidating Trustee determines in good faith could prejudice the prosecution of any Designated Avoidance Action.

**8.3**    Tax Returns and Payments.

8.3.1    General. The Liquidating Trustee will be responsible for filing all foreign, U.S. federal, state and local Tax returns for the Liquidating Trust and for the timely preparation and distribution to the Beneficiaries of any necessary foreign, U.S. federal, state or local information returns.

8.3.2    General Trust Accounts. The Liquidating Trustee will timely (a) file such income Tax and other returns and statements as are required to comply with (i) the applicable provisions of the Internal Revenue Code and the Treasury Regulations promulgated thereunder, and (ii) any applicable state and local law and the regulations promulgated thereunder and (b) pay from the applicable Trust Account any Taxes reported as owing on such returns and statements.

### ARTICLE 9.
### MISCELLANEOUS

**9.1**    Notices.

All notices, payments, requests, reports, information and other communications between the parties hereto, or otherwise to be made to the Liquidating Trustee, shall be addressed as follows:

(a)    to the Liquidating Trustee:


with copy to:



(b)    If to the Debtor prior to the Effective Date:

15

with copy to:

(c)     If to the Advisory Committee, to each member thereof at such member's address set forth on Exhibit B or to such other address as may from time to time be provided in a written notice to each party.

**9.2**    No Bond.

Notwithstanding any state law to the contrary, the Liquidating Trustee (including any successor) will be exempt from giving any bond or other security in any jurisdiction.

**9.3**    Governing Law; Submission to Jurisdiction; Service of Process.

This Agreement will be construed in accordance with and governed by the internal substantive law of the State of Oklahoma regardless of the laws that might otherwise govern under principles of conflict of laws applicable thereto. The Bankruptcy Court will have exclusive jurisdiction over any dispute arising out of or in connection with the transactions contemplated by this Agreement pursuant to the retention of jurisdiction contained in the Plan.

**9.4**    Successors and Assigns.

This Agreement will inure to the benefit of and will be binding upon the parties hereto and their respective successors and permitted assigns. The Beneficiaries, the Liquidating Trustee and the Advisory Committee are the only beneficiaries of this Agreement, and there shall be no other beneficiaries, including any third-party beneficiaries, hereof.

**9.5**    No Execution.

All funds in the Liquidating Trust will be deemed in *custodia legis* until such times as the funds have actually been paid to or for the benefit of a Beneficiary, and no Beneficiary or any other person can execute upon, garnish or attach the Liquidating Trust Assets or the Liquidating Trust in any manner or compel payment from the Liquidating Trust except by order of the Bankruptcy Court. Payment will be solely governed by the Plan and this Agreement.

**9.6**    Amendment.

This Agreement may be amended only by order of the Bankruptcy Court after notice and a hearing.

**9.7**    Severability.

If any term, provision, covenant or restriction contained in this Agreement is held by a court of competent jurisdiction or other authority to be invalid, void, unenforceable or against its regulatory policy, the remainder of the terms, provisions, covenants and restrictions contained in this Agreement will remain in full force and effect and will in no way be affected, impaired or invalidated.

**9.8**    Cooperation.

The Reorganized Debtor shall cooperate with the Liquidating Trustee's information requests to the extent reasonably necessary for him or her to carry out his or her obligations hereunder.

IN WITNESS WHEREOF, the parties have executed this Agreement (or are deemed to have so executed this Agreement) as of the day and year written above.

**ON BEHALF OF THE LIQUIDATING TRUSTEE:**

_____

**ON BEHALF OF THE LIQUIDATING TRUST (AND ONLY IN SUCH CAPACITY)**

_____

**PAUL TRANSPORTATION, INC.**

_____
Name:
Title:

**The Official Committee of Unsecured Creditors of Paul Transportation, Inc.**

_____
Name:
Title:

17

Exhibit A

## **ENGAGEMENT LETTER**

[To be attached]

1

## ADVISORY COMMITTEE

[To be listed]