**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| **PAUL TRANSPORTATION, INC.,** | ) | **Case No. 10-13022-NLJ** |
| | ) | |
| **Debtor.** | ) | **Ch. 11** |

**OFFICIAL UNSECURED CREDITORS' COMMITTEE'S**
**OBJECTION TO DEBTOR AND GE CREDITORS'**
**JOINT MOTION FOR ORDER AUTHORIZING**
**COMPROMISE OF CONTROVERSY PURSUANT TO RULE 9019**

COMES NOW, the Official Committee of Unsecured Creditors (the "Committee" or "Unsecured Creditors") and hereby files this Objection ("Objection") to the Joint Motion for Order Authorizing Compromise of Controversy Pursuant to Rule 9019 dated April 25, 2011 [Dkt. 340] ("Motion to Compromise") as filed by the Debtor and General Electric Capital Corporation ("GECC") and Colonial Pacific Leasing Corporation ("CPLC") (the "GE Creditors"). In support of this Objection, the Committee states as follows:

1.  Debtor Paul Transportation, Inc. ("PTI" or "Debtor") filed a voluntary Chapter 11 bankruptcy petition on May 18, 2010. On December 15, 2010, Debtor filed its proposed Disclosure Statement and Plan of Reorganization. On February 28, 2011, Debtor filed its First Amended Plan of Reorganization and First Amended Disclosure Statement. Objections to the confirmation of the Amended Plan have been filed by several parties. A confirmation hearing has been set by this Court for May 25, 2011.

2.  In Debtor's Amended Disclosure Statement, the Debtor has estimated that the total amount of unsecured claims which it believes will ultimately be allowed will be $3,410,800.19. *See* Amended Disclosure Statement at 35. It is assumed that the GE Creditors' claim is included in this unsecured pool as they are an unsecured creditor. The Debtor's

Amended Plan provides for a total distribution of $2,422,426.28 to all unsecured creditors ultimately allowed and over 8 years. *See* Amended Plan at 25-26. Accordingly, under Debtor's Amended Plan, all unsecured creditors should receive approximately 71 cents on the dollar if all are treated consistently and if the Debtor's estimate of the dollar amount of allowed unsecured claims is ultimately correct.[1]

3.    Following the filing of Debtor's Amended Plan, and to the significant surprise and concern of all actively involved in this proceeding, the Workers' Compensation Court ("WCC") filed a late, second amended proof of claim. In doing so, the WCC claim rose from approximately $300k, then to $500k, and then essentially doubled to the present $1,205,711.00. If any of the WCC claims are ultimately allowed in any of these three amounts, this not only has the potential to drastically alter the Debtor's ability to reorganize, but will also significantly alter the Debtor's previous estimate of its unsecured claims and/or distribution to the unsecured claimants class. The Debtor's present estimate of the unsecured claims does not include <u>any</u> WCC claim in the projected $3,410,800.19 estimated allowed unsecured claim class figure.

4.    On April 25, 2011, Debtor, along with unsecured creditors General Electric Capital Corporation ("GECC") and Colonial Pacific Leasing Corporation ("CPLC") (collectively also referred to as the "GE Creditors" or "Movants") filed their Motion to Compromise. In their motion, Movants seek Court approval for 1) an agreed value of $1,730,783.68 for a deficiency claim following the sale of collateral and 2) a proposed total payment plan of $1,298,088.00 in satisfaction of said deficiency.[2] If the Motion to Compromise is granted, the GE Creditors would

---

[1]This number was obtained by dividing the amount available for distribution ($2,422,426.28) by the amount of the unsecured claims ($3,410,800.19).

[2]The Motion to Compromise is purportedly made in accordance with an Agreement between Debtor and the GE Creditors, which Movants state is "available for review upon request to undersigned counsel." *See* Motion to Compromise at 2, n. 1. Counsel for the Committee has requested a copy of said Agreement from Counsel for the GE Creditors. The request was declined on the grounds that an agreement had yet to be finalized. This essentially begs

essentially be guaranteed a distribution of 75 cents on the dollar, as demonstrated by the calculations below:

| Proposed Payment | | $1,298,088.00 | | 75 cents on the |
|---|---|---|---|---|
| Deficiency | = | $1,730,783.68 | = | dollar. |

5.     In their Motion to Compromise, the GE Creditors assert that they "have agreed to compromise their claims in [the] bankruptcy proceeding and to accept less favorable treatment under 1123(a)(4) of the Bankruptcy Code." *See* Motion to Compromise at Page 2, ¶ 10 (emphasis added). The GE Creditors' characterization of their compromise as "less favorable treatment" is erroneous; to the contrary, simple math reveals that the Motion to Compromise clearly seeks to elevate the GE Creditors above other similarly situated unsecured creditors.[3]

6.     It is actually almost impossible for this Court to determine with mathematical certainty if the GE proposal is fair and to what extent that it is preferring the unsecured GE claim as opposed to other unsecured creditors. It is not known what treatment the amended claim of WCC will ultimately receive. In its objection, WCC asks to be treated as administrative claim. Though the Committee strongly believes that there is no authority to allow the WCC to be treated as a priority claim, if in fact this Court would allow its full late filed amended claim of $1.2mm to be treated as priority, it would take 100% of the remaining funds currently projected to be paid to the unsecured creditors class *other than those to be designated under the GE proposal* to pay WCC. Conversely, if a claim is allowed in some amount as unsecured, each

---

the question: how can the terms of the agreement be approved by the Court if no terms have been finalized and creditors not properly noticed?

[3]Additionally, in an effort to persuade the Court that the compromise is "fair and equitable", the GE Creditors point to the fact that they are forfeiting all possible recovery under the Liquidating Trust. This concession is not comparable. The Liquidating Trust, authorized under Debtor's Plan to pursue designated avoidance actions, holds only three potential claims. The likelihood of recovery is uncertain and presently, the Committee believes that any recovery might be less than 10% of the amount of the identified claims. Furthermore, any recovery stemming from the Liquidating Trust is subject to the costs and attorney fees. In contrast, no such costs, limitations, or uncertainty is imposed upon the GE Creditors' distribution through the proposed Motion.

dollar of the WCC claim allowed increases the unsecured creditor claim pool. Because the Debtor has proposed a specific amount of money to be paid to the unsecured creditors, as the unsecured creditor pool increases, the amount each unsecured creditor receives is reduced pro rata. So, until such time as the claim of the WCC is determined, the Court will have insufficient facts to determine to the penny what effect that claim will have on other similarly situated general unsecured creditors. All we do know is that regardless of that treatment, it is going to negatively affect the proposed distribution to unsecured creditors.

7.     What we can do is make some reasonable assumptions about the WCC claim and its effect on the unsecured claims/class if the GE proposal is granted, and GE is effectively granted its own 'special' unsecured class. These estimates are based upon three possible outcomes where 1) no workers' compensation claim is allowed; 2) the WCC claims are settled for $450,000 and treated as unsecured, and finally 3) the WCC's claim is allowed in its entirety.

A.     **Outcome No. 1: The Workers' Compensation Claim Is Denied.**

8.     The first possible scenario (though not likely) presented to this Court assumes that the WCC Amended Claims would be subsequently denied in its entirety, and thus, the amount of unsecured claims remain as stated in Debtor's Amended Plan and Disclosure. As previously stated in Paragraph 4, if the Motion to Compromise is granted, the GE Creditors would essentially be guaranteed a distribution of 75 cents on the dollar:

| Proposed Payment | | $1,298,088.00 | | **75 cents on the** |
|---|---|---|---|---|
| Deficiency | = | $1,730,783.68 | = | **dollar.** |

In comparison, the distribution available to the remaining unsecured creditors would be limited to 67 cents on the dollar. To make this determination, the "guaranteed" amount to be paid to the GE Creditors under the proposed Compromise must be deducted from the total projected amount available to the remaining unsecured creditors under the proposed plan, and the GE Creditors'

claim must also be deducted from the projected general unsecured claim class (note, this same

math applies in part to all three estimated outcomes):

> Amount of Unsecured Distribution Available Under the Plan- GE's Stipulated Amount
> Total Amount of Projected Unsecured Claims- GE Creditor's Claim

Thus, the distribution for the remaining unsecured creditors would be:

$$\frac{\$2,422,426.28 - \$1,298,088.00}{\$3,410,800.19 - \$1,730,783.68} = \textbf{67 cents on the Dollar}$$

It is important to note that for purposes of all of these projections, the Committee is using the

Debtor's estimate of what the final allowed unsecured class will be. That actual final allowed

unsecured class could well be higher since the estimate assumes that many claims will be

disallowed.

9.     As reflected by this first example (no allowed WCC claim) and the above-stated

calculations, the GE Creditors would receive approximately eight percent (8%) more than other

members of its same class. Accordingly, the Motion to Compromise should not be approved

because it improperly seeks preferable treatment of the GE Creditors over members in the same

class. It is not a fair exchange or compromise.

**B.     Outcome No. 2:   The Workers' Compensation Claim Is Allowed At $450,000 Unsecured.**

10.     The inequalities imbedded in the GE Motion to Compromise become even more

glaring when considering the probable effect the workers' compensation claims would have on

the amount of distributions to the unsecured creditor class. Under this possible outcome, the

presumption is that the WCC claim is ultimately allowed, via trial or compromise, at

$450,000.00 unsecured (**note**-as discussed briefly above, the present WCC claim is asserted to be

a priority claim. If the WCC claim is allowed as priority, then there is little doubt that all funds

necessary to pay that priority claim would come from the proposed distribution to unsecured

creditors. That would significant reduce or even eliminate any distribution to remaining unsecured creditors (except the GE Creditors under their pending Motion) depending on what amount would be allowed as priority).

11.     The Committee has learned that Debtor and the WCC have discussed a possible resolution which might stipulate that the claim of WCC would be allowed and stipulated to be $450,000.00 for all workers' compensation claims. If that amount was sought and approved then that $450,000.00 would be added to the unsecured creditors' class. If the GE Motion to Compromise is also granted, the GE Creditors would continue to receive the aforementioned 75 cents on the dollar. Nothing changes in that respect. However and in contrast, the remaining unsecured creditors' recovery would be significantly eroded by the addition of $450,000.00 in additional unsecured debt into the remaining unsecured class, as demonstrated below. In this example, we take the Plan projected amount available for the unsecured creditor class of $2,422.426.28 and subtract what would be paid to GE ($1,298.087.76 which is 75% of the agreed claim) under the pending Motion to Compromise and divide that figure by the remaining estimated unsecured class after backing out the GE claim, and adding the possible WCC claim to the unsecured class.

Plan Projected Amount Available for Distribution to Unsecured Class-GE Payment
Amount of Remaining Claims estimated by Debtor + Amount of Compromised Workers'
Compensation Claim

$2,422,426.28 - 1,298,088.00
$1,680,016.51 + $450,000.00 =        **53 cents on the dollar.**

Under this outcome, the remaining unsecured creditors would receive approximately twenty-two percent (22%) less than the GE Creditors. This is clearly inequitable. Even though we don't know what the final numbers will be until the WCC claim is resolved, we can see by this example that regardless of the WCC number, the remaining similarly situated unsecured class

creditors are receiving significantly less than the unsecured GE creditor. The Motion to Compromise should be denied.

**C.    Outcome No. 3: Workers' Compensation Claim Of $1,205,711.00 Is Allowed In Full As Unsecured.**

12.    As already discussed briefly above, the present WCC claim is asserted to be a priority claim. If the WCC claim is allowed as priority in the full amount of its present amended claim, then there is little doubt that all funds necessary to pay that claim would come from the proposed distribution to unsecured creditors, other than GE. More specifically, as established in paragraph 11 above, if the Motion of GE is approved, then the 'guaranteed' payment to GE of $1,298,088.00 would have to be subtracted from the total Plan projected amount to be paid to unsecured creditors as a whole, which is $2,422.426.28. If the GE Motion is approved, then the remaining unsecured class after GE would share pro rata the remaining projected plan payment of $1,124,338.28. As the Court can see, the present WCC amended claim of $1,205,711.00 exceeds this remaining amount available. Therefore, if the WCC amended claim is allowed as filed, and the GE Motion is approved, GE would be paid 75% of its claim and all other similarly situated unsecured creditors would receive -0-. This is obviously unfairly discriminatory and prohibited.

13.    Conversely, if the WCC amended claim is allowed as filed except as unsecured, than the WCC's claim of $1,205,711.00 would be added to the total amount of remaining projected unsecured class claims after the GE claim is pulled out. This also alters the amount of distribution to the non-GE unsecured creditors as follows:

Total Amount Available for distribution to remaining Unsecured Creditors – GE 75%
Total Amount of Unsecured Claims, including the $1,205,711.00 WCC claim

$$\frac{\$1,124,338.28}{\$2,885,727.51} = \quad \textbf{39 cents on the dollar}$$

Under this last projected outcome, the GE Creditors would continue to receive 75 cents on the dollar under their proposed Motion to Compromise while the rest of the similarly situated unsecured class creditors would be limited to 39 cents on the dollar– approximately half the amount afforded to the GE Creditors. In contrast, if the Motion to Compromise is denied, and the GE Creditors' claim remains as a general unsecured claim and the entire workers' compensation claim is allowed, all unsecured creditors including the GE Creditors would receive no less than 53 cents on the dollar. Putting all unsecured creditors, including the GE Creditors, together is clearly the more equitable solution. Even though we do not know what amount of WCC claim will ultimately be allowed, The Motion to Compromise should be denied.

## CONCLUSION AND RELIEF REQUESTED

At this point, the Court cannot make a specific determination as to the different amounts which the GE Creditors and the remaining unsecured creditor class might receive until the WCC claim is resolved. However, even without that information, the Court can see that the Motion is not fair for several reasons.

One, neither the Court nor creditors can determine exactly what the terms are of the agreement which is being proposed. The GE Creditors and the Debtor have filed a Motion and shortened the time for parties to respond yet they cannot provide a copy to parties in interest of the actual Agreement referenced in their Motion. At the time this Objection was being prepared, no copy of the proposed Agreement referenced in the Motion had been provided, though requested. Further, counsel for the Committee was told that the Agreement referenced in the Motion has not been finalized. It certainly seems odd that a Motion would be proposed with

respect to a proposal that has not been reached. The Court cannot approve an Agreement which has not been fully noticed.

Second, the outstanding issues surrounding the WCC claim prohibit the Court from the ability to determine whether any agreement, if provided, is fair with respect to similar situated debt as the GE Creditors, i.e., other unsecured creditors. However, the few examples provided by the Committee, based on supportable assumptions, clearly demonstrate that regardless of the outcome of the WCC claim, any proposal that provides for the GE Creditors to receive designated funds applicable to its claim will be to the significant prejudice to other similar unsecured debt. In some cases, the result may be no payment to unsecured creditors while the GE Creditors would receive 75% of their debt.

The GE Creditors attempt to further justify their Motion by stating that they will waive any claim to the liquidating trust proposed under the Plan. However, the Committee believes that the potential value of the three (3) avoidance actions which make up the trust actually have a small value relative to the claims. The actual value of the avoidance claims may be less than 10% of their stated value.

Truth be stated, there really is no compromise here. The GE Creditors attempt to use their waiver of any claim to a proposed liquidating trust of questionable value as a shallow basis to justify a significant preferential treatment as to their unsecured debt. It is further interesting to note that their debt does appear to be guaranteed by the principal of the Debtor. Therefore, the Debtor may have an interest in getting the Motion approved in that the principal benefits directly from the approval of a better deal for GE, rather than all unsecured creditors.

In summary, the Motion cannot be approved. This Court cannot determine how fair this proposed agreement is without the agreement, and further, without knowing for certain how the

claim of WCC will be treated. Without that information, the Court cannot compare the proposed guaranteed payment to GE of 75% to how all other unsecured creditors are going to be treated. However, it appears clear that no matter how WCC is ultimately treated, unless its claim is denied in full, unsecured creditors as a class will suffer through a reduced distribution.

The Motion must be denied as a matter of fact and law. The Motion to Compromise improperly seeks preferable treatment of the GE Creditors over similarly situated unsecured members of the same class. The Committee respectfully asks that this Court deny approval of the Motion to Compromise.

Dated: May 9, 2011

Respectfully submitted,

*s/ Lyle R. Nelson*
Lyle R. Nelson, OBA#10914
Eric L. Huddleston, OBA# 21225
Karolina Roberts, OBA# 22288
Elias, Books, Brown & Nelson, P.C.
Two Leadership Square, Ste. 1300
211 N. Robinson
Oklahoma City, OK 73102
(405) 232-4021 Phone/ (405) 232-3746 Fax
lyle@lylenelsonlaw.com

COUNSEL FOR THE OFFICIAL COMMITTEE
OF UNSECURED CREDITORS

## CERTIFICATE OF SERVICE

I hereby certify that on the 9th day of May, 2011, a true and correct copy of the Objection to GE Creditor's Joint Motion to Compromise was electronically served upon the following using the Court's CM/ECF system:

U.S. Trustee
Attorney Regan Strickland Beatty
Attorney Kevin Blaney
Attorney Brian J. Boerner
Attorney G. David Bryant
Attorney Travis L. Cagle
Attorney Stephen W. Elliot
Attorney Matthew Clay Goodin
Attorney David W. Hammond
Attorney John B. Heatly
Attorney William H. Hoch
Attorney Nkem A. House
Attorney Eric L. Huddleston
Attorney Crystal A. Johnson
Attorney Carlos D. Mayes
Attorney John W. Mee
Attorney Kiran A. Phansalkar
Attorney Loretta K. Roberts
Attorney Karolina Roberts
Attorney Andrew R. Turner
Attorney Edward M. Zachary

Further, I certify that on the 9th day of May, 2011, a true and correct copy of the Objection to GE Creditor's Joint Motion to Compromise was forwarded via U.S. Mail, first class postage prepaid and properly addressed, to the following at the addresses shown below:

Office of the U.S. Trustee (via ECF only)
215 Dean A. McGee Avenue
4th Floor
Oklahoma City, OK 73102

                    s/ Lyle R. Nelson
                    Lyle R. Nelson